[No. F009212. Fifth Dist. Nov. 9, 1988.]

BETTY BASSETT-McGREGOR, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, MADERA
NEWSPAPERS, INC., et al., Respondents.

COUNSEL

Canelo, Hansen & Wilson and Ronald W. Hansen for Petitioner.

McMurchie, Foley, Brandenburger, Weill & Keeling and Daniel L. Keeling for Respondents.

OPINION

HAMLIN, J.—Petitioner Betty Bassett-McGregor (applicant herein) seeks review of a decision of the Workers' Compensation Appeals Board (Board) after reconsideration, in which the Board determined applicant's claim for cumulative industrial injury is barred by the statute of limitations. Applicant contends there was no substantial evidence to support the Board's finding that she knew, or in the exercise of reasonable diligence should have known, her cardiac arrest was the result of job stress; the Board acted in excess of its powers; and the decision was unreasonable. We reject appli-

cant's substantial evidence contention but conclude the Board incorrectly determined that applicant's cumulative injury claim was time-barred.

This case presents an unusual variant of the problem of applying the statute of limitations (Lab. Code, § 5405)[1] to a claim for cumulative industrial injury. Applicant was being treated for heart problems, including tachycardia, prior to July 27, 1984, when she suffered a cardiac arrest while at work as an advertising manager for Madera Newspapers, Inc. (employer). On December 12, 1984, within the limitations period, applicant filed a claim for compensation for specific industrial injury. Approximately two years after applicant's heart attack, applicant received a medical opinion that her disability was the result of cumulative trauma and on July 23, 1986, filed a second claim alleging disability based upon cumulative injury. Although the record indicates applicant sought to amend the initial application to state a claim for cumulative rather than specific injury, at trial applicant acquiesced in the handling of each application as a separate claim. Following trial, the workers' compensation judge (WCJ) denied applicant's initial claim for specific injury and awarded benefits based on the second claim, finding that applicant's disability was caused by cumulative work stress. Although in a supplemental decision the WCJ rejected the contention of employer and its workers' compensation carrier, Allianz Insurance Company (Allianz), that the cumulative claim was time-barred, the Board granted reconsideration and reversed on the statute of limitations issue, leaving applicant uncompensated.

The principal questions presented by the petition for review are (1) whether a medical opinion concerning the cumulative nature of the injury is necessary before the statute of limitations begins to run on a claim for cumulative disability; and (2) whether the July 23, 1986, cumulative injury filing can be held to "relate back" to the initial claim so as to avoid the bar of the statute of limitations. We consider these issues after further setting forth the procedural and factual background.

PROCEDURAL AND FACTUAL BACKGROUND

Applicant, an advertising manager for employer, suffered a cardiac arrest while working on July 27, 1984, and was off work from July 28, 1984, through January 4, 1985. During this period she consulted an attorney because she felt her problem was job related and she had medical bills that were not covered by her insurance. On December 12, 1984, applicant filed a workers' compensation claim (case No. 84 FRE 67638) alleging that she

---

[1] Further statutory references are to the Labor Code unless otherwise noted.

". . . sustained injury arising out of and in the course of employment to Heart" while "selling advertising . . . ."

On July 23, 1986, applicant tendered a second application form, designated "AMENDED APPLICATION FOR ADJUDICATION OF CLAIM" in case No. 84 FRE 67638, which nevertheless was assigned a new case number (86 FRE 77525),[2] alleging that cumulative job trauma from July 27, 1983, through July 27, 1984, caused applicant's heart attack. In each case, Allianz contested that the injury arose out of and in the course of employment, and no benefits were paid. In case No. 86 FRE 77525, Allianz raised the issue of the statute of limitations.

On October 16, 1986, a hearing was held in both cases before the WCJ. Applicant concedes that counsel "acquiesced at the trial in allowing two cases to proceed, one on a specific injury theory, and the other on a cumulative job stress theory."

At the time of her cardiac arrest in July 1984, applicant was 59 years old and had worked as an advertising manager for employer and the predecessor company, The Chowchilla News, for seven years. Her duties included selling ads and doing layouts and bookwork; 85 to 90 percent of her time was spent in the field selling ads and making customer contacts.

Applicant had been under medical supervision for premature ventricular contractions, tachycardia and arrhythmia since 1978. She was hospitalized twice before 1979 for this problem, and saw a doctor periodically for hypertension; she was on medication for both these problems during the year prior to July 1984.

Applicant was referred to Dr. William Owen by Dr. Virgil Reyes in 1979 for another opinion on her rapid heartbeat. In 1982, Dr. Owen told her to cut down on her hours because he felt the problem was related to her job.

On the morning of July 27, 1984, applicant went to Kelly's Tire Service, where she was dealing with John Kelly, a regular customer. Applicant did not recall being under any unusual stress that morning, but remembered that it was "extremely hot" at Kelly's. She put her head down on the counter and regained consciousness approximately one week later in the intensive care unit at St. Agnes Hospital. Applicant was hospitalized for 17 days. She testified that while in the hospital she did not discuss with Dr. Owen the possible relationship of her heart problem to her employment.

---

[2] Applicant asserts that the amended application was assigned a new case number solely on the initiative of the Board's clerical staff and has submitted a declaration of an office supervisor for the Board to that effect.

Following her initial hospitalization for the heart attack, applicant underwent evaluation at Stanford University Hospital. In December 1984, while at home lying down, she started having premature ventricular contractions and was again hospitalized for regulation of her medication. Applicant testified that subsequently she has had very few premature ventricular contractions. She returned to work full-time in January 1985 in her former capacity and continued to conduct sales in the field.

The several medical reports filed as exhibits at the hearing contained widely differing views of the causes of applicant's heart attack and resulting disability. Doctors' certificates filed with the Employment Development Department by applicant's attending physicians following her July 1984 hospitalization indicate that Dr. Owen felt applicant's disability was not the result of her employment, whereas Dr. Reyes expressed no opinion.[3] Dr. Reyes did indicate that he did not report the disability as a workers' compensation claim. He listed as his diagnosis "Acute cardio. resp. arrest due to ventricular tachycardia, . . ." and stated that applicant was disabled as of July 27, 1984.

Dr. William S. Breall, a cardiologist, examined applicant in June 1985 at the request of Allianz. He concluded that applicant had no cardiac disability and that the heart attack was caused by "prolapse of the posterior leaflet of the mitral valve," and "myocardial bridging of the anterior descending branch of the left coronary artery," congenital syndromes associated with "ventricular arrhythmias." Dr. Breall further reported, "It is obvious upon reviewing the entire cardiovascular problem of Ms. Bassett-McGregor that she does not have an industrially related heart condition. There was no specific work event that caused heart muscle damage. There was no chronic cumulative injury to her heart."

In contrast, Dr. Richard M. Luros, an internist who examined applicant in April 1986 at the request of her attorney, concluded that applicant had an industrial disability caused by "cumulative stress at work," which "predisposed her to tachyarrhythmias and fibrillation, . . ." Dr. Luros's report refers to a 1982 (predisability) report of Dr. Owen to Dr. Reyes in evidence. In his report of May 6, 1982, Dr. Owen wrote: "I would feel that Mrs. McGregor is having recurrent episodes of ventricular tachyarrhythmia. These really do seem to be tension phenomenon [*sic*] with her and may be related to her job situation as well as her current relationship with her new husband. This was discussed with her and she feels that these factors may well play a role in this."

---

[3] Although respondent asserts that the doctors' certificates were not part of the record before the WCJ, the return shows that they were admitted in evidence.

None of the examining physicians found evidence of coronary heart disease.

On February 20, 1987, the WCJ issued his findings and award in case No. 86 FRE 77525, holding that applicant had sustained injury to her heart which arose out of and in the course of her employment during the period July 29, 1983, through July 27, 1984. Applicant was awarded reimbursement for medical expenses, temporary disability from July 28, 1984, through January 4, 1985, a permanent disability rating of 30 percent, plus future medical care. In his opinion on decision, the WCJ explained that applicant's testimony and the report of Dr. Luros established "an industrial cumulative trauma injury to [applicant's] heart and cardiovascular system. There is no evidence of a specific injury." In companion case No. 84 FRE 67638, the WCJ issued his findings and order that applicant take nothing because "[t]he preponderance of the evidence does not indicate that applicant sustained a specific injury on July 27, 1984 . . . as alleged."

Thereafter, on March 17, 1987, Allianz petitioned for reconsideration in case No. 86 FRE 77525 on the ground that the WCJ had failed to address the statute of limitations issue. Reconsideration was granted and on May 5, 1987, the WCJ issued supplemental findings and order holding that the claim in No. 86 FRE 77525 for cumulative injury was not barred. In concluding that applicant was not chargeable with knowledge of an industrial cumulative trauma injury to her heart prior to the April 1986 report of Dr. Luros, the WCJ noted that Dr. Owen's 1982 report did not definitely state that there was a relationship between applicant's work and her episodes of racing heartbeat, that it failed to discuss whether any possible relationship was to a specific incident or incidents or to cumulative trauma, and that if the report was interpreted to refer to a cumulative trauma, the date of injury would be limited to the period before the date of the examination in May 1982. Lastly, in the WCJ's opinion, applicant was "not . . . particularly sophisticated about workers' compensation matters," and increased her sales efforts after her examination by Dr. Owen in 1982 "because of the responsibility she felt for the company. This is not the behavior of a person who knows that she is undergoing cumulative injury to her heart."

Employer and Allianz again petitioned the Board for reconsideration, contending that the cumulative disability claim in case No. 86 FRE 77525 was time-barred. Following briefing by the parties and a report of the WCJ recommending denial, the Board granted reconsideration and overturned the decision of the WCJ on the statute of limitations issue. In its opinion, the Board noted that applicant saw Dr. Owen in May 1982 for increasing heart palpitations and testified that she was told at that time to cut down on

her hours because Dr. Owen felt the problem was related to her work. From July 1983 to July 1984, when she suffered cardiac arrest, applicant continued to have slight palpitations from time to time after returning home from work. The Board further stated: "[Applicant's] testimony indicates that she understood Dr. Owen to be saying that there was a relationship between her cardiac problems and her job duties. That this was her understanding is confirmed by the fact that she saw her attorney about filing a workers' compensation claim within a year of the incident. Any equivocation that there might be in Dr. Owen's report must be considered in the light of these facts. Applicant's testimony and conduct establishes that within a year of the incident, she was aware of the relationship between her employment and her injury. [Citation.]

"Thus we conclude the date of injury for purposes of Section 5412, is July 27, 1984."

Noting that a claim for cumulative injury involves different evidence and proof than a claim for specific injury, the Board also rejected the possibility of amending applicant's original claim for specific injury after trial to conform to proof of a cumulative injury so as to avoid the bar of the statute of limitations. "Even though the medical evidence it produces might deal with the medical aspects as though both a cumulative and specific injury were being alleged, defendant had no reason to develop the nonmedical issues that might be relevant to the issue of whether applicant sustained a cumulative injury while she was employed by defendant until a cumulative injury was alleged. Therefore, the specific injury claim cannot be amended to allege a cumulative trauma. This is especially pertinent where applicant has not even attempted to amend the application prior to submission order and where a decision has issued. One may not raise for the first time on reconsideration an issue that has not previously been raised. [Citations.]"

On September 14, 1987, applicant timely filed the instant petition and this court issued a writ of review.

### DISCUSSION

*Was applicant's claim of disability based on cumulative industrial injury barred by the statute of limitations?*

Under section 5405, a claimant must file an application for disability benefits and medical care within one year from the date of injury, the expiration of the period of industrial indemnity or the last date medical benefits were furnished under the Workers' Compensation Act. "Injury" is broadly defined to include both injuries and diseases. (§ 3208.) For the

purpose of establishing the date of injury, section 3208.1 distinguishes between "specific" and "cumulative" injuries. As explained in 2 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed. 1988 rev.) section 11.01 [2][c], pages 11-6–11-7: "An injury may be either 'specific,' occurring as the result of one incident or exposure which causes disability or need for medical treatment; or 'cumulative,' occurring as the result of repetitive mentally or physically traumatic activities extending over a period of time, the combined effect of which causes any disability or need for medical treatment. Thus, an injury may result from the accumulated effects of overwork or from long-continued exposure to tension and strain. Where there is such an extended exposure, the result is regarded as one continuous, 'cumulative' injury rather than as a series of individual or 'specific' injuries. Separately, each day's strain may be slight, but when added to the strains which have preceded, it becomes a destructive force." (Fns. omitted.)

Although for specific injuries the "date of injury" is "that date during the employment on which occurred the alleged incident or exposure, for the consequences of which compensation is claimed" (§ 5411), section 3208.1 specifically provides that "[t]he date of a cumulative injury shall be the date determined under Section 5412." The latter section provides that "[t]he date of injury in cases of occupational diseases or cumulative injuries is the date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that such disability was caused by his present or prior employment." (See *J. T. Thorp, Inc.* v. *Workers' Comp. Appeals Bd.* (1984) 153 Cal.App.3d 327, 336 [200 Cal.Rptr. 219].) "Disability" is an impairment of bodily function which impairs earning capacity. (*Ibid.*)

 Thus, for the purpose of the statute of limitations, the date of a cumulative injury "requires concurrence of two elements: (1) compensable disability, and (2) knowledge of industrial causation." (Swezey, Cal. Workers' Compensation Practice (Cont.Ed.Bar 3d ed. 1985) § 4.25, p. 114.) "These elements present questions of fact to be determined by the Appeals Board. The burden of proving them is on the employer." (2 Hanna, *op. cit. supra,* § 18.03 [5][a], pp. 18-18–18-18.1, fns. omitted.)

In this matter, the Board found that "within a year of the [applicant's cardiac arrest], she was aware of the relationship between her employment and her injury," set the date of injury as July 27, 1984, and accordingly held that the claim for cumulative injury filed on July 23, 1986, was time-barred. Applicant challenges the finding that she knew, or in the exercise of reasonable diligence should have known, more than one year prior to the July 1986 filing that her disability was caused by cumulative job trauma. Addi-

tionally, applicant asserts that the July 1986 filing relates back to the December 1984 specific injury filing so as to toll the limitations period.

■ On review, a decision of the Board will be upheld if supported by substantial evidence, including reasonable inferences from the testimony. (*Alford* v. *Industrial Accident Com.* (1946) 28 Cal.2d 198, 204 [169 P.2d 641]; *Nielsen* v. *Workers' Comp. Appeals Bd.* (1985) 164 Cal.App.3d 918, 927 [210 Cal.Rptr. 843].)

"The board's decision must 'state the evidence relied upon and specify in detail the reasons for the decision.' (§ 5908.5.) Substantial evidence to support the decision is 'measured on the basis of the entire record, rather than by simply isolating evidence which supports the board and ignoring other relevant facts of record which rebut or explain that evidence.' (*Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 . . . .) 'And if the evidence relied upon and the reasons stated for the decision do not support it, the decision must be annulled. [Citations omitted.]' (*City of Santa Ana* v. *Workers' Comp. Appeals Bd.* (1982) 128 Cal.App.3d 212, 219 . . . .)" (*City of Fresno* v. *Workers' Comp. Appeals Bd.* (1985) 163 Cal.App.3d 467, 470 [209 Cal.Rptr. 463] [hereafter referred to as *City of Fresno*].)

A. ■ *Does the statute of limitations begin to run on a cumulative disability claim when the employee is aware of her disability and knows that it is job related, but has not received a medical opinion to the effect that the disability is the result of cumulative, rather than specific, trauma?*

In *City of Fresno, supra,* 163 Cal.App.3d 467, this court recently considered the question of whether the statute of limitations begins to run on a cumulative disability when the employee forms the belief, without medical confirmation, that his disability is job related. There, the applicant, a department manager for the city, was hospitalized after suffering chest pain in December 1980; he was found to have evidence of myocardial infarction. He testified that he began believing, without medical confirmation, that his problem was job related in early spring 1981. In June 1981, a doctor who examined him on behalf of the city reported that the disability was not of industrial origin, and the city formally denied benefits on July 22, 1981. The Board held that the applicant's claim for benefits filed July 9, 1982, within one year of notice of denial by the city, was timely. (*Id.* at pp. 469-470.) Reviewing the authority on the necessity of expert medical advice to establish the requisite knowledge of industrial causation, we observed: "The general rules regarding the effect of medical advice on whether an applicant knew or in the exercise of reasonable diligence should have known his disability was caused by his employment are stated in 2 Hanna, California

Law of Employee Injuries and Workmen's Compensation, *supra,* section 18.03[5][b]: 'An employee clearly may be held to be aware that his or her disability was caused by the employment when so advised by a physician. Generally, until he receives such medical advice he is not chargeable with knowledge of his condition and its relation to his work . . . .'

"This language suggests that expert medical advice is necessary before an employee knows or should know that his injury is caused by his employment. However, Hanna points out: 'Under some circumstances, an employee's knowledge of the disabling nature of his or her ailment may antedate actual medical diagnosis, as where he or she has some medical knowledge and training, or where he has declared that the work is detrimental to his health and may prove fatal.' (*Ibid.*)

"Case law interpreting section 5412 and similar legislative provisions in other states adds little to the rules set forth in 2 Hanna, California Law of Employee Injuries and Workmen's Compensation, *supra.*

"There is no real disagreement that medical advice to an applicant for workers' compensation benefits that his disability was caused by his employment is sufficient to trigger the statute of limitations. (See *Hooker* v. *Workmen's Comp. Appeals Bd.* (1974) 36 Cal.App.3d 698, 704-705 . . . .)

"However, in some cumulative injury cases a medical opinion that the applicant's disability is work related is not necessary to support a finding that an applicant, in the exercise of reasonable diligence, should have known of that relationship. (See, e.g., *Alford* v. *Industrial Accident Com., supra,* 28 Cal.2d 198 [inferring knowledge of employment connection with disability from the applicant's request to be relieved of plant work because he believed it was detrimental to his health and might be fatal]; *Reinhold* v. *Industrial Commission* (1948) 253 Wis. 606 [34 N.W.2d 814] [barring nurse's disability from tuberculosis because doctors informed her that she had tuberculous peritonitis five years before she filed her claim; her knowledge of the sources of tuberculosis and that her only contacts with active tuberculosis were in the course of her employment were determinative]; *Chambers* v. *Workmen's Comp. App. Bd.* [(1968)] 69 Cal.2d 556 [72 Cal.Rptr. 651, 446 P.2d 531] [long continued work in a dust-filled room of a boring mill with ventilation coming only from the windows and doors and without a breathing apparatus did not trigger the statute of limitations on his emphysema disability; it was only when the applicant read an article, less than one year before he filed his application, that dust inhalation could cause emphysema that in the exercise of reasonable diligence he should have known his emphysema was industrially caused].)

" . . . . . . . . . . . . . . . . . .

"*We glean from these authorities the rule that an applicant will not be charged with knowledge that his disability is job related without medical advice to that effect unless the nature of the disability and applicant's training, intelligence and qualifications are such that applicant should have recognized the relationship between the known adverse factors involved in his employment and his disability.*" (163 Cal.App.3d at pp. 472-473, italics added.)

Applying this rule, we found substantial evidence supported the Board's determination that the city did not meet its burden under section 5412 of establishing the applicant's actual or constructive knowledge of the relationship of his employment to his disability. "Applicant did not have the training or qualifications to recognize the relationship between the known adverse factors involved in his employment and his disability. Applicant's expression of the belief, shared by most disabled employees, that his employment caused his disability does not mandate a contrary conclusion." (163 Cal.App.3d at pp. 473.)

In *Nielsen* v. *Workers' Comp. Appeals Bd., supra,* 164 Cal.App.3d 918, cited by employer and Allianz, the court considered a similar question on review of a Board decision upholding a finding that the applicant's claim for disability based on cumulative back injury was barred by the statute of limitations. Characterizing the rule stated in *City of Fresno* as "a bit overly expansive" in light of prior case law, the court stated that "the absence of a medical opinion confirming industrial causation is but one important circumstance which is to be considered together with the other circumstances in determining in a particular case whether the applicant should reasonably have known his or her injury was industrially caused." (*Nielsen, supra,* 164 Cal.App.3d at p. 930.) The *Nielsen* court upheld the finding that the claim was time-barred despite testimony of the applicant that he did not receive a medical opinion of industrial causation until sometime after a CAT scan was performed approximately 12 months prior to filing of the claim. Stressing that applicant's back injury caused or aggravated by heavy lifting was not "some exotic disease the causes of which might be obscure and debatable," the court pointed out that applicant's knowledge of the industrial causation of his condition was supported by his own suggestions to the treating physicians immediately after the injury. (*Id.* at pp. 930-931.)

Under the standards of either *City of Fresno* or *Nielsen,* substantial evidence supports the Board's determination that applicant knew, or in the exercise of reasonable diligence should have known, that her disability was work related more than one year prior to filing her claim for cumulative disability in July 1986.

The evidence is undisputed that after consulting her lawyer, applicant filed on December 12, 1984, a workers' compensation claim alleging that she sustained injury arising out of her employment. That claim leaves no doubt that as of December 12, 1984, applicant knew her cardiac arrest was job related. Applicant's own testimony was that she consulted a lawyer because she felt her heart problem was job related. If she and her lawyer were uncertain whether her disability was caused by a specific injury as alleged, a cumulative injury, or both, she was permitted to file at the same time a separate application for each separate injury under rule 10401 of the Workers' Compensation Appeals Board Rules of Practice and Procedure (Cal. Code Regs., tit. 8, § 10401).

Without disputing these facts, applicant nevertheless argues that the statute of limitations did not begin to run on her cumulative injury claim until she received Dr. Luros's opinion that her industrial disability was caused by cumulative trauma, rather than a specific injury. Applicant thus contends that in addition to knowledge and medical evidence of industrial causation, an applicant must possess medical evidence of the specific or cumulative nature of the injury before the statute of limitations begins to run on a claim. Section 5412 does not expressly require knowledge of the type of industrial causation, and applicant cites no case supporting such an additional element.

Applicant contends that basing the date of injury upon mere general knowledge of the industrial causation of the disability unfairly penalizes an applicant who mistakenly believes that the disability was caused by a specific exposure, rather than cumulative trauma. Applicant points to evidence that she believed her tachycardia was associated with hot temperatures and that the cardiac arrest was the result of a specific exposure while "selling advertising to a customer on an extremely hot day." She also relies on the absence of any evidence that she had any special training or knowledge that would have assisted her in determining whether the injury was specific or cumulative, particularly in light of the complex nature of her heart problem. According to applicant, "[o]ne need only compare the two conflicting expert reports to appreciate the uniqueness, uncertainty and complexity of petitioner's heart condition and disability. The Board's decision necessarily requires petitioner, a layperson, to have a greater degree of expertise than the two experts in the case."

We are not persuaded by applicant's argument. Following applicant's theory to its logical extreme, in cases of uncertain etiology it would be unnecessary for an applicant to file any claim until confident of the nature of the industrial causation, although it was clear from the outset the disability was job related. Such an interpretation, by delaying the employer's

opportunity to investigate claims, would undermine the objective of the limitations statute.

■ As explained in *Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (1985) 39 Cal.3d 57, 62 [216 Cal.Rptr. 115, 702 P.2d 197]: "The purpose of any limitations statute is to require 'diligent prosecution of known claims thereby providing necessary finality and predictability in legal affairs, and ensuring that claims will be resolved while the evidence bearing on the issues is reasonably available and fresh.' (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd. (Webb)* (1977) 19 Cal.3d 329, 336 [137 Cal.Rptr. 878, 562 P.2d 1037]; see also 3 Larson, Workmen's Compensation Law (1983) § 78.10 ['The purpose . . . of any limitations statute [is] to protect the employer against claims too old to be successfully investigated and defended']; 2 Hanna, Cal. Law of Employee Injury and Workmen's Compensation (2d ed. 1984) § 18.02[1] [the purpose of a statute of limitations in workers' compensation cases 'is to cause an early submission of controversies while it is possible to obtain competent evidence concerning the alleged injury and its effects, and thus to afford protection against false claims or those based upon remote and unsatisfactory speculation as to the cause of a disability . . .'].)" Moreover, as noted above, applicant had the means to protect against uncertainty as to the cause of her single industrial disability by filing separate claims for specific and cumulative injury at the same time.

■ We hold that applicant's knowledge that her disability was industrially caused was sufficient to establish the date of injury under section 5412. Undisputed evidence establishes that applicant had such knowledge at the time she filed her initial claim for benefits in December 1984. Accordingly, her cumulative injury claim was barred under section 5405 unless the filing of that claim "relates back" to the December 1984 filing of applicant's initial claim.

B. *Does the July 1986 cumulative injury filing "relate back" to the December 1984 filing?*

■ Applicant further contends that the Board's decision applying the statute of limitations was unreasonable because the timely filing of the December 1984 application for benefits alleging a specific injury to the heart on July 27, 1984, should preserve the Board's jurisdiction to award benefits for her cumulative heart injury. She urges that, as the second filing arose from the same set of facts as the first, the second application should "relate back" to the original claim for the purpose of the statute of limitations. In this connection, she asserts that the statute of limitations issue was created by the Board's staff when it assigned a new case number to the July 1986

"amended" application rather than filing it as an amendment in the original December 1984 case. Applicant relies upon the declaration of an office service supervisor for the Board's office in Fresno to establish that the decision to file the cumulative injury claim in a separate case was made by the Board's staff, without the knowledge or consent of applicant's attorney. That declaration, which was not introduced before the WCJ or Board, is not properly before us on writ of review. (See § 5951.) However, the record before the Board does reveal that the second application was designated "AMENDED APPLICATION FOR ADJUDICATION OF CLAIM." It related to the same disability as described in the first application and the disability arose from the same set of facts.[4]

As a general principle of pleading, an amended complaint or other pleading serving a similar purpose supersedes the original. (See 5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 1114, p. 532.) Although the amended pleading supersedes the original as a subsisting pleading, it does not wholly nullify the fact of filing the original (*ibid.*). "The time of filing the original is still the date of commencement of the action for purposes of the statute of limitations (except where a wholly different case is pleaded by the amendment)." (*Ibid.*; see also 1 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra,* § 5.01[2][e], p. 5-8.)

Applicant's amended application seeking benefits on the theory of a cumulative injury to her heart does not allege a new and different cause of action. (See *Bland* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 324, 330-331 [90 Cal.Rptr. 431, 475 P.2d 663]; *Rubio* v. *Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 196, 200 [211 Cal.Rptr. 461]; see also § 5303; *Chavez* v. *Workmen's Comp. Appeals Bd.* (1973) 31 Cal.App.3d 5, 14 [106 Cal.Rptr. 853]; *Beveridge* v. *Industrial Acc. Com.* (1959) 175 Cal.App.2d 592, 598 [346 P.2d 545].) Our holding that an amendment substituting a claim for cumulative rather than specific injury does not constitute a new and different cause of action is limited to circumstances such as these in which the disability is the same and the injury arose from the same set of facts, and is consistent with the guiding principle that claims should be adjudicated on substance rather than formality of statement. (See *Beveridge* v. *Industrial Acc. Com., supra,* at p. 598.)

At the hearing before the WCJ in the consolidated proceeding both of applicant's claims—the first one for specific injury and the second one for cumulative injury—were separately resolved without objection by any party. Allianz and employer assert that applicant's acquiescence in such a

---

[4]Indeed, the allegations of the original application arguably are sufficiently broad to be construed as a claim for either specific or cumulative injury.

procedure constituted a waiver of her right to contend that her amended application superseded her first application. We disagree.

All evidence relevant to each application was before the WCJ and the Board. Allianz and employer were not misled in their defense or otherwise prejudiced by the procedural error that resulted in a single hearing in a consolidated proceeding that improperly involved a superseded claim for a specific injury in addition to the claim for cumulative injury. It was the latter claim on which benefits were awarded by the WCJ and denied by the Board only because it erroneously concluded that relief on the cumulative injury claim was barred by section 5405.

For the reasons stated, and in accordance with the mandate that limitations provisions in the workers' compensation law are to be construed in favor of an employee's claim for compensation (§ 3202; *Bland* v. *Workmen's Comp. App. Bd., supra,* 3 Cal.3d 324, 330-331), we hold that applicant's July 1986 cumulative injury claim made in her "AMENDED APPLICATION FOR ADJUDICATION OF CLAIM" was timely filed because the amended application superseded applicant's first claim and related back to the December 1984 filing for the purpose of the statute of limitations.

The decision of the Board after reconsideration that applicant's cumulative injury claim is barred by the statute of limitations is annulled.

Martin, Acting P. J., and Best, J., concurred.