[No. B075903. Second Dist., Div. Three. June 30, 1994.]

KENNETH BRAY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, ITT-BARTON et al.,
Respondents.

COUNSEL

Cantrell, Green, Pekich, Cruz & McCort and Wayne McCort for Petitioner.

Parker & Irwin and Joan E. Partritz for Respondents.

OPINION

CROSKEY, J.—Kenneth Bray (Bray), a discharged employee, sought workers' compensation benefits, alleging industrial injury to his nerves, psyche and internal system caused by termination from his employment. The workers' compensation judge (WCJ) awarded him compensation. The Workers' Compensation Appeals Board (Board) rescinded the award on the grounds that Bray's injury was not one "arising out of and in the course of the employment," as required by Labor Code section 3600, subdivision (a).[1] While it is true that an employee's termination is a matter which occurs in the course of employment, we nonetheless reach the commonsense conclusion that for sound public policy reasons a posttermination emotional injury,

---

[1] Unless otherwise indicated, all statutory references are to the Labor Code.

arising solely from the fact of termination, is not compensable. We therefore affirm the decision of the Board.

## FACTUAL AND PROCEDURAL BACKGROUND

Bray was employed as a manufacturing engineer from August 1, 1988, to January 23, 1989, by defendant employer ITT-Barton, which was in turn insured by defendant Insurance Company of North America (hereinafter collectively the defendants).[2]

On January 23, 1989, Bray's employment was terminated by his employer without warning. According to the evidentiary summary prepared by the WCJ, Bray testified: "[O]n his way home from being terminated, he was completely devastated and had to pull off the freeway. He stopped at a Denny's in Whittier off the 605 Freeway. He sat there for two or three hours contemplating what he would do. He had anxiety, nervousness and sweating. He had been doing this job [engineering] for 40 years and then all of a sudden he's been told that he is incompetent, which was [the] reason for [his] termination."

Bray sought help for his emotional distress from a clinical psychologist, Sivan Caukins, Ph.D., in March 1989. On August 14, 1990, Dr. Caukins reported that Bray felt he had been the victim of age discrimination, that the termination had devastated him and that, as a result, he had been totally temporarily disabled for over a year and was permanently and severely psychologically impaired.[3]

A hearing on Bray's claim was held June 7, 1991. According to the evidentiary summary, Bray testified at length. He had a long employment history as a "job engineer," going from one company to another on contract for relatively short periods of time. He worked for many companies over a 40-year period. The longest period of employment was seven years. While he had been terminated by several employers since 1980, he had no warning

---

[2]For some months prior to August 1, 1988, when he was hired directly by the company, applicant had worked at ITT-Barton as a temporary employee sent in by "a job shop named Voit."

[3]Internist Robert Foster, M.D., reported on January 17, 1991, that he agreed with Dr. Caukins that Bray's gastrointestinal problems were largely due to the job termination. Internist Stanley Majcher, M.D., reporting for the defense on March 14, 1991, declared that Bray had no industrially caused problems. Defendants also obtained a report from psychiatrist Donald Feldman, M.D., dated February 11, 1991. Dr. Feldman stated that "[i]f job termination is considered industrial, then [Bray's] present difficulties are considered industrial and psychological care until the end of his workers' compensation claim [is] prudent. [¶] If job termination is considered nonindustrial, current psychiatric state will be considered nonindustrial." Dr. Feldman found Bray's permanent psychiatric disability "very slight to slight."

defendant ITT-Barton was going to fire him; he thought he was doing well.[4] It was a blow. He felt particularly hopeless and depressed because he was terminated at age 61 and, given such age, thought it would be difficult to find other work, particularly after being branded incompetent. He had tried to find other work after his termination from ITT-Barton without success.

On September 11, 1991, the WCJ determined that Bray had sustained an injury to his nerves and psyche arising out of and occurring in the course of his employment during the dates August 1, 1988 to January 23, 1989. The WCJ relied on the report of Dr. Feldman (see fn. 3, *ante*) in determining that Bray had sustained permanent psychiatric injury of 19.5 percent. While the WCJ had found that Bray had sustained a cumulative industrial injury during his entire employment, her written decision stated: "It is the opinion of both [Bray's] and defendants' doctors that [Bray's] present psychiatric injury is caused by his termination from ITT-Barton. It is found that, in this particular case, termination alone was the causative factor of the psychiatric injury which occurred *after* [Bray's] termination." (Italics in original.)[5] The WCJ declined to find injury to [Bray's] internal system, and did not award further medical treatment nor impose any penalties upon defendants for failure to pay temporary and permanent disability benefits.

Defendants petitioned for reconsideration, declaring that the issue was "whether a termination in and of itself which results in feelings of inadequacy or other psychological symptoms is an industrial injury. . . ."

Bray opposed the petition and relied on *Shoemaker* v. *Myers* (1990) 52 Cal.3d 1, 20 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016] (*Shoemaker*). In that case, our Supreme Court barred civil suits based on wrongful termination (with some exceptions which do not apply here) and

---

[4]Contrary to Bray's testimony on this point, the record discloses that there were incidents at work prior to termination suggesting that his job performance was negatively viewed by his employer.

[5]For reasons which are not disclosed by the record, defendants did not contend that the discrepancy between the WCJ's finding that Bray had sustained a cumulative injury and her description of Bray's termination as the specific cause of his psychiatric injury constituted error. However, at oral argument, defense counsel argued that the Board had held that the WCJ's error in finding a cumulative industrial injury without evidentiary support in the record was an alternative reason for rescinding the WCJ's award. The record does not support this contention. In the second Board opinion, the Board noted that applicant had "narrowed the scope of his claim to the last day of employment, January 23, 1989. He asserts that 'injury resulted from the termination itself.' There is, of course, the question of whether that is a new and different claim. *However, even assuming it is part of the same claim, we do not believe that applicant has proven a compensable injury.*" (Italics added.) It is clear the Board did not rely on the procedural error in arriving at its decision, which was wise in view of the liberality in compensation proceedings in conforming pleadings to proof. (*Bassett-McGregor* v. *Workers' Comp. Appeals Bd.* (1988) 205 Cal.App.3d 1102, 1116 [252 Cal.Rptr. 868].)

held that employees wrongfully terminated were limited to the exclusive remedy of workers' compensation because they had sustained an industrial injury. The court specifically held "that both the act of termination and the acts leading up to termination necessarily arise out of and occur during and in the course of the employment." (52 Cal.3d at p. 20.) Defendants responded that *Shoemaker* was factually distinguishable from the present case because it involved a long-term employee who had suffered from a series of injurious acts which had occurred *prior* to his termination.

The WCJ recommended denial of reconsideration. While she agreed that *Shoemaker* was different factually, she pointed out that the decision nonetheless declared that the court wanted to avoid the "evidentiary nightmare" which would result from differentiating between pretermination injuries and injuries caused by the termination itself. It was for this reason that the *Shoemaker* court had concluded that both types of injuries would be compensable pursuant to section 3600, subdivision (a).[6]

The Board, however, granted reconsideration and, on February 19, 1993, issued an opinion reversing the WCJ on the ground that Bray's injury was *not* industrial. The Board stated that *Shoemaker* had not ruled on the question of whether the act of termination *followed by injury* was compensable. It noted that in *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083 [4 Cal.Rptr.2d 874, 824 P.2d 680] (*Gantt*), the Supreme Court observed that the *Shoemaker* court had expressly reserved this issue when it stated, "[W]e need not decide whether workers' compensation applies where the injuries arise 'only *after* the termination." (*Id.*, at p. 1097, fn. 8, italics in original.) The Board concluded: "The Board does not believe that such after-the-fact reactions [such as that allegedly sustained by Bray] constitute an injury 'arising out of the employment' or occurring during the course of the employment. If such injuries were compensable, then every worker who was emotionally upset at his employer for being fired or laid off would be entitled to workers' compensation benefits and this program would become a substitute for the unemployment insurance program, with longer and higher benefits."

Bray filed an amended petition for reconsideration, pointing out that the whole rationale for *Shoemaker* was that emotional distress and psychiatric

---

[6]The *Shoemaker* court specifically rejected the dictim in *Georgia-Pacific Corp.* v. *Workers' Comp. Appeals Bd.* (1983) 144 Cal.App.3d 72, 75 [192 Cal.Rptr. 643], which stated that an injury caused by termination was not "work related" and therefore would not be compensable. The court then concluded, "Our determination that injuries arising from termination of employment ordinarily arise out of and occur in the course of the employment within the meaning of Labor Code section 3600 avoids the evidentiary nightmare that might result from application of the *Geogia-Pacific* dictum requiring differentiation between injuries, especially psychological injuries, caused by conduct leading up to the termination and injuries caused by the termination itself [citation]. Accordingly, we conclude that both the act of termination and the acts leading up to termination necessarily arise out of and occur during and in the course of the employment." (52 Cal.3d at pp. 19-20.)

injury claims generated by wrongful termination of employment belonged in the compensation system rather than the civil courts. On May 3, 1993, the Board denied reconsideration, again pointing out that neither *Shoemaker* nor *Gantt* supported the view that an injury arising *after* job termination was compensable pursuant to section 3600, subdivision (a). Bray then successfully sought a writ of review in this court.

## DISCUSSION

Section 3600, subdivision (a), provides, in pertinent part, that "[l]iability for . . . compensation . . . shall, without regard to negligence, exist against any employer for any injury sustained by his or her employees arising out of and in the course of the employment . . . ." One of the requisite conditions for compensability is found in subdivision (a)(3), "[w]here the injury is proximately caused by the employment, either with or without negligence." Section 3602, subdivision (a), provides that "[w]here the conditions of compensation set forth in Section 3600 concur, the right to recover such compensation is, . . . the sole and exclusive remedy of the employee or his or her dependents against the employer, . . ."

"Ordinarily, injuries arising from termination of employment arise out of and occur in the course of employment within the meaning of Labor Code section 3600. [Citations.] If the actions of the employer in terminating the employee 'constitute a normal part of the employment relationship,' injuries which result are subject to the exclusive remedy provisions of Labor Code section 3602. [Citation.] This is so even if the injuries flow from intentional misconduct by the employer, and even if such conduct might be characterized as egregious, manifestly unfair, outrageous, or intended to cause emotional disturbance resulting in disability. [Citations.]" (*B & E Convalescent Center* v. *State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 89-90 [9 Cal.Rptr.2d 894].)[7]

However, as one legal commentator recently put it, ". . . the California Supreme Court has yet to decide whether or not workers' compensation applies when the injuries resulting from termination arose only after the

---

[7]A separate civil action for damages may nonetheless be brought by an employee injured as the result of employer misconduct, whether in the form of discharge or otherwise, *not* seen as reasonably coming within the "compensation bargain." (*Shoemaker, supra,* 52 Cal.3d at p. 20; see also discussion of authorities in *B & E Convalescent Center* v. *State Compensation Ins. Fund, supra,* 8 Cal.App.4th at pp. 90-91.)

termination." (1 Hanna, Cal. Law of Employee Injuries & Workers' Compensation (2d ed. 1993), The Relationship Between Injury & Employment, § 4.65[1], pp. 4-80 through 4-81, fns. omitted.)[8]

The law summarized by Hanna draws heavily on a series of recently decided California Supreme Court cases. The fundamental policy decision to relegate most wrongful termination issues to resolution within the workers' compensation system has come at a time when there has also been a perceived need by the Legislature to limit the recovery by employees of workers' compensation for injuries to the psyche assertedly experienced in the workplace.[9]

However, this new legislation which, by its terms, is applicable only to injuries occurring on or after January 1, 1990, and therefore does not directly apply to Bray's claims, includes a legislative recognition of the need to limit compensation payments for *posttermination psychiatric injury*. Of particular relevance to our discussion is section 3208.3, subdivisions (b), (c), (d), (e) and (h).[10] These subdivisions were either added or significantly amended in 1993 as a part of a comprehensive legislative package relating to workers' compensation reform. They are therefore relevant to our appreciation of the

---

[8]In Hanna's treatise, varieties of employer activity occurring during the termination process are detailed, including conduct which could be characterized as unfair or even outrageous but which does not take the termination out of the employment bargain, and thus out of the workers' compensation system. It is also noted in section 4.65[2], pages 4-82 through 4-84, that "[i]njuries, whether mental or physical or both, that result from termination of employment are not solely compensable by workers' compensation if the basis for termination is expressly or impliedly prohibited by statute, if the employer's conduct violates public policy, or if the employer's conduct does not reasonably come within the compensation bargain."

[9]The Legislature has recently demonstrated an increasing hostility to claims for such injuries in the workers' compensation system. The Margolin-Bill Greene Workers' Compensation Reform Act of 1989 (Stats. 1989, ch. 892) undertook to limit the viability of employee claims of work-related psychiatric injuries. In new section 3208.3, subdivision (c) (added by Stats. 1990, ch. 1550, § 20), the Legislature expressed its intent "to establish a new and higher threshold of compensability for psychiatric injury under this division." Among other requirements, subdivision (d) provided that an employee was not entitled to an award based upon industrial psychiatric injury "unless the employee has been employed by that employer for at least six months." This provision has now withstood constitutional challenge. (*Hansen* v. *Workers' Compensation Appeals Bd.* (1993) 18 Cal.App.4th 1179 [23 Cal.Rptr.2d 30].) Section 3208.3 has also undergone significant revision in 1993, increasing causation requirements for work-related psychiatric injuries. (Stats. 1993, ch. 118, § 1, eff. July 16, 1993; Stats. 1993, ch. 1242, § 22.)

[10]Section 3208.3, subdivision (b) provides:

"(1) In order to establish that a psychiatric injury is compensable, an employee shall demonstrate by a preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury.

"(2) Notwithstanding paragraph (1), in the case of employees whose injuries resulted from being a victim of a violent act or from direct exposure to a significant violent act, the

public policy implications of the claim submitted by Bray even though his claim is not directly affected by such legislation.[11]

---

employee shall be required to demonstrate by a preponderance of the evidence that actual events of employment were a substantial cause of injury.

"(3) For the purposes of this section 'substantial cause' means at least 35 to 40 percent of the causation from all sources combined."

Section 3208.3, subdivision (c) provides:

"It is the intent of the Legislature in enacting this section to establish a new a higher threshold of compensability for psychiatric injury under this division."

Section 3208.3, subdivision (d) provides:

"Notwithstanding any other provision of this division, no compensation shall be paid pursuant to this division for a psychiatric injury related to a claim against an employer unless the employee has been employed by that employer for at least six months. The six months of employment need not be continuous. This subdivision shall not apply if the psychiatric injury is caused by a sudden and extraordinary employment condition. Nothing in this subdivision shall be construed to authorize an employee, or his or her dependents, to bring an action at law or equity for damages against the employer for a psychiatric injury, where those rights would not exist pursuant to the exclusive remedy doctrine set forth in Section 3602 in the absence of the amendment of this section by the act adding this subdivision."

Section 3208.3, subdivision (e) provides:

"Where the claim for compensation is filed after notice of termination of employment or layoff, including voluntary layoff, and the claim is for an injury occurring prior to the time of notice of termination or layoff, no compensation shall be paid unless the employee demonstrates by a preponderance of the evidence that actual events of employment were predominant as to all causes combined of the psychiatric injury and one or more of the following conditions exist:

"(1) Sudden and extraordinary events of employment were the cause of the injury.

"(2) The employer has notice of the psychiatric injury under Chapter 2 (commencing with Section 5400) prior to the notice of termination or layoff.

"(3) The employee's medical records existing prior to notice of termination or layoff contain evidence of treatment of the psychiatric injury. . . .

"(4) Upon a finding of sexual or racial harassment by any trier of fact, whether contractual, administrative, regulatory, or judicial.

"(5) Evidence that the date of injury, as specified in Section 5411 or 5412, is subsequent to the date of the notice of termination or layoff, but prior to the effective date of the termination or layoff."

Section 3208.3, subdivision (h) provides:

"No compensation under this division shall be paid by an employer for a psychiatric injury if the injury was substantially caused by a lawful, nondiscriminatory, good faith personnel action. The burden of proof shall rest with the party asserting the issue."

[11]In signing this comprehensive legislative package the Governor made the following comments in his signature message to the Legislature, dated July 16, 1993:

"For years, California's fraud-ridden workers' compensation system has been the single greatest barrier to job creation in our state. By one estimate, it's been costing us 60,000 jobs a year. But with the signing of this measure, we're starting the process of tearing down that barrier, freeing Californians to create tens of thousands of new jobs a year. [¶] . . . [¶] This package of reforms saves money by tightening the standard for stress claims in the system, the fastest growing type of claim in the workers' compensation. [¶] . . . [¶] . . . these reforms crack down on those who are defrauding the system. This legislation marks the beginning of the end for the stress-mill millionaires. [¶] In short, this legislation gives us a significant handle on what have been exploding costs of workers' compensation."

The recent trend of Supreme Court decisions has also been to restrict recovery by discharged employees complaining about the fact, manner and consequences of their termination. In *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148 [233 Cal.Rptr. 308, 729 P.2d 743], the California Supreme Court held that the exclusive remedy provision of the workers' compensation law precluded a civil action for intentional infliction of emotional distress during employment. *Shoemaker* held that injuries resulting from the nonconsensual termination of employment necessarily arose out of and occurred during and in the course of employment and thus are included within the scope of workers' compensation. (52 Cal.3d at p. 20.) *Shoemaker* went on to state, however, that, "This is not a case in which the employee was terminated and began to suffer emotional distress and physical injury only *after* the termination. We therefore need not address the requisite temporal and causal relationships between a termination and an injury because here plaintiff's injuries allegedly occurred either before the termination or after he was restored to his employment." (52 Cal.3d 14, fn. 6, italics in original.)

In *Gantt, supra,* 1 Cal.4th 1083, the Supreme Court confirmed that wrongful terminations which violated some established public policy (e.g., the so-called *"Tameny"* exception, based on *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R.4th 314]) continued to be the appropriate subject of civil litigation outside workers' compensation. However, *Gantt* reaffirmed *Shoemaker*'s cautionary comment to say that "we need not decide whether workers' compensation applies where the injuries arise 'only after the termination.' " (1 Cal.4th at p. 1097, fn. 8, italics in original.)

In *Livitsanos* v. *Superior Court* (1992) 2 Cal.4th 744 [7 Cal.Rptr.2d 808, 828 P.2d 1195], the Supreme Court reiterated that wrongful termination suits alleging psychiatric injury belonged in the compensation system and observed that "[c]ompensation for psychiatric injury is not new; rather, in enacting section 3208.3 [see fn. 9, *ante*], the Legislature intended simply to require a higher threshold of compensability for psychiatric injury . . . . An employee who suffers a disabling emotional injury caused by the employment is entitled, upon appropriate proof, to workers' compensation benefits, including any necessary disability compensation or medical or hospital benefits." (2 Cal.4th at pp. 753-754.) However, the injury must be disabling. The purpose of the workers' compensation system is to compensate for a disabled worker's diminished ability to compete in the open market, not to

compensate every "work-related injury." (*Mercier* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 711, 716 [129 Cal.Rptr. 161, 548 P.2d 361].) In recognition of this basic principle, the *Livitsanos* court observed that "[n]ot every aggravation in normal employment life is compensable." (2 Cal.4th at p. 755.) As the expressed reservations of these decisions and the new statutory language suggest, the compensability of posttermination emotional stress claims, not based on pretermination events, is open to serious doubt.

With these principles in mind, we address the case before us. Bray had been employed as a regular employee by ITT-Barton for a little less than six months at the time of his termination, but since his termination and injury occurred prior to the effective date of the 1990 amendment to section 3208.3, subdivision (d), that statute, in and of itself, does not prevent a recovery.

What does bar Bray's claim, however, is the necessity of setting a limit on recovery for psychiatric injuries which occur *after* termination of employment *and which are caused solely by the fact of termination,* where that termination does not involve employer conduct violative of statute or fundamental public policy or employer conduct which falls outside the "compensation bargain." (See *Shoemaker, supra,* 52 Cal. 3d at p. 20; see also fn. 8, *ante.*) The workers' compensation system, as well as the employers and insurers, cannot absorb, and should not be required to absorb, the very substantial potential cost of awards for emotional distress caused solely by a lawful job termination. It is safe to say that in a majority of involuntary job termination situations, the employee becomes—at least temporarily—upset by the event. As we recently stated, "It does not require extensive discussion to demonstrate the devastating impact of the loss of a job, whether from a financial, psychological or emotional point of view." (*B & E Convalescent Center* v. *State Compensation Ins. Fund, supra,* 8 Cal.App.4th at p. 98.) However, reality and common sense dictate that not every job termination must necessarily generate a workers' compensation award.

Section 3208.3, subdivision (e) (see fn. 10, *ante*), significantly increases the burden of proving a pretermination psychiatric injury where the claim is not filed until *after* a termination notice. However, the statute makes no reference whatever to a *post*termination injury such as we have in this case. There are only two possible explanations for this omission. Either (1) the Legislature intended to leave such posttermination injury claims free of any restrictions or increased burdens of proof, or (2) there was a legislative assumption that posttermination injuries not resulting from pretermination events were not compensable under existing law in any event. Obviously, the

latter alternative is the only reasonable one. It would be anomalous indeed for the Legislature to so strictly limit compensability of pretermination injuries and yet place no restrictions on a posttermination claim which is not based on any pretermination circumstances, but rather arises solely from the termination itself or some posttermination event. We can only conclude that, in the contemplation of this reform legislation, such a claim simply would not have been compensable even prior to the statutory changes.

In the instant case, the Board correctly determined that applicant's psychiatric injury, arising after termination from his employment, and solely because of the fact of termination, is not compensable. We agree with the Board that the fact of job termination by an employer, without more, cannot result in liability to the terminated employee by way of a workers' compensation award.

Although Bray was unexpectedly terminated, he never alleged there were injurious incidents prior to termination which might have rendered the employer liable for a compensable injury. Bray unfortunately experienced an event which, while upsetting and anxiety producing, is so common that, *as a matter of public policy*, it cannot provide the basis for a compensable claim. To hold otherwise would quickly convert workers' compensation into another form of unemployment insurance. That would be a result for which neither employers nor compensation insurers have bargained and for which employees could have no reasonable expectation. Most certainly, such a result would effectively undermine and directly conflict with the obvious purposes and public policies upon which the new reform legislation is based.

In subdivision (h) of section 3208.3 there is a bar to payment of compensation for a psychiatric injury "substantially caused by a lawful, nondiscriminatory, good faith personnel action." This phrase obviously includes a termination but is not necessarily limited to that act. However, it by no means suggests that absent this exception a compensation claim could be asserted for a posttermination psychiatric injury. This conclusion is not only consistent with but is compelled by the simple commonsense notion that an employer should not be responsible for an employee's reaction to the fact of an otherwise lawful termination of employment. It is also consistent with the principle that the court should not sanction a new form of unemployment insurance which not only has not been authorized by the Legislature but now has been statutorily prohibited in the new comprehensive reform legislation.[12]

---

[12]Indeed, the new statutory limitations on posttermination claims have not been limited to psychiatric injuries. These same legislative reforms also include similar, but somewhat less

## Disposition

Respondent Workers' Compensation Appeals Board's May 3, 1993, order denying reconsideration is affirmed.

Klein, P. J., and Kitching, J., concurred.

A petition for a rehearing was denied July 18, 1994, and petitioner's application for review by the Supreme Court was denied September 8, 1994.

---

stringent, restrictions in section 3600 which are applicable to nonpsychiatric injuries for which a *post*termination claim is filed. (See § 3600, subd. (a)(10).)