[No. F024693. Fifth Dist. Nov. 13, 1996.]

ARMEN MICHAELIAN et al., Plaintiffs and Appellants, v.
STATE COMPENSATION INSURANCE FUND, Defendant and
Respondent.

## Counsel

Dowling, Magarian, Aaron & Heyman, Richard E. Heatter, Heyman, Kerkorian & Magarian, Kent F. Heyman, Mark D. Magarian and Brady K. McGuinness for Plaintiffs and Appellants.

Richard A. Krimen, Charles W. Savage and Barbara Gallios-Lee for Defendant and Respondent.

## Opinion

**THAXTER, J.**—In this case we decide that the employer's liability portion of a workers' compensation insurance policy does not provide coverage when the insured employer is sued for sexual harassment and related tort causes stemming from the alleged harassment. We further decide that the insurer, under no policy obligation to indemnify or defend against a pending third party action, did not become liable for defense costs when it notified the insured it would provide a defense under a full reservation of rights and subsequently, after paying only a portion of the defense costs, withdrew. The insured did not allege facts showing either that the insurer was estopped from denying a duty to defend or that an exchange of letters, followed by partial payment, constituted an enforceable contract. We will affirm the trial court's judgment entered after sustaining the insurer's demurrer without leave to amend.

## Facts[1] and Procedural Background

### The Insurance Policy

Respondent State Compensation Insurance Fund (State Fund) issued a "Workers' Compensation & Employer's Liability Insurance Policy" (Policy) to appellants Armen Michaelian, individually and as Armen Michaelian, D.D.S., Inc. (Michaelian). Part 1 of the Policy provided workers' compensation coverage and part 2 provided employer's liability coverage. The latter coverage applied to liability for bodily injury or death of an employee of the insured arising out of the injured employee's employment within California. The employer liability coverage is subject to several express exclusions, including:

"2. punitive or exemplary damages where insurance for such liability is prohibited by law or contrary to public policy;

". . . . . . . . . . . . . . . . . . . . . . . . .

"5. bodily injury intentionally caused or aggravated by you; or

"6. damages arising out of the discharge of, coercion of or discrimination against any employee in violation of law."

The Policy does not provide general liability coverage.

Both parts of the Policy coverage provisions obligated State Fund "to defend at our expense any claim, proceeding or suit against [Michaelian] for benefits payable by this insurance. We have the right to investigate and settle these claims, proceedings or suits. [¶] We have no duty to defend a claim, proceeding or suit that is not covered by this insurance."

### The Cobb Complaint

In August 1993 Toni Cobb (Cobb) sued Michaelian in Fresno County Superior Court (Cobb v. Michaelian, *supra*, No. 494150-6). Cobb's complaint alleged she was employed by Michaelian from February 4, 1990, to September 21, 1992. During that time Michaelian allegedly subjected her to verbal, physical and visual sexual harassment which included:

a. making vulgar comments in front of Cobb and others expressing his desire to engage in oral and anal copulation, homosexual activity, and pedophilic conduct;

---

[1]All facts are drawn from the first amended complaint except for those alleged in the complaint in Fresno County Superior Court, case No. 494150-6, entitled Cobb v. Michaelian. The trial court took judicial notice of the latter pleading pursuant to Evidence Code section 452, subdivision (d).

b. commenting that he wanted to engage in anal copulation with Cobb;

c. referring to women, in the presence of Cobb and others, as "cunts" and "bitches" and stating that after having babies women should be killed, after which he would engage in necrophilia with the corpses;

d. telling Cobb women are inferior to men and should be exterminated;

e. walking up behind Cobb, grabbing her hair and telling her he wished to ejaculate over her hair and breasts;

f. making similar vulgar comments to Cobb on September 21, 1992, when he hit her in the back;

g. pinching and/or patting Cobb on her backside almost daily.

According to Cobb's complaint, Michaelian did not respond to her numerous requests to stop his conduct and comments.

On December 1, 1992, Cobb filed a complaint of discrimination with the California Department of Fair Employment and Housing (DFEH) based on Michaelian's alleged sexual harassment of her. She stated the harassment created a hostile and intimidating work environment that became so intolerable she was forced to quit her job. In March 1993, the DFEH authorized Cobb to file suit against Michaelian.

Based on the alleged facts, Cobb sought compensatory and punitive damages for sexual harassment in violation of Government Code section 12940, subdivisions (h) and (i), constructive discharge resulting from harassment, assault and battery, and intentional and negligent infliction of emotional distress.

*Demands for Defense of the Cobb Action*

On September 30, 1993, Michaelian's counsel mailed a letter to State Fund requesting indemnity and a defense of the Cobb action under the Policy. State Fund did not respond. A second and third request were sent January 12, 1994, and February 16, 1994, respectively. Again, no response was received. Following a similar letter in April 1994, Michaelian's counsel received a call from an attorney for State Fund advising Michaelian to contact Donald Bartunek, a State Fund agent in San Francisco. Michaelian's counsel contacted Bartunek, discussed the pending Cobb action, and asked the agent to attend an interview of Michaelian being conducted by other insurers on May 6, 1994, in Fresno. Bartunek and a State Fund attorney

attended the interview. When leaving, Bartunek promised a decision would be forthcoming concerning defense and indemnity of the Cobb action under the Policy.

On May 23, 1994, Michaelian's counsel telephoned Bartunek, as no word had been received. Bartunek said a defense and indemnity determination letter had been prepared and would be sent within a day or two. No such letter was received. A subsequent phone message from Michaelian's counsel to Bartunek went unanswered.

On June 14, 1994, Michaelian's counsel mailed a letter to Bartunek requesting a defense and indemnity under the Policy, and stating that if no response was received by June 22, 1994, Michaelian would file a legal action against State Fund.

On July 19, 1994, Michaelian filed Fresno County Superior Court case No. 514702-0 against State Fund, seeking damages and declaratory relief.[2] On July 21, 1994, State Fund's counsel contacted Michaelian's counsel stating State Fund had received the summons and complaint, and the promised defense and indemnity determination letter " 'fell between the cracks because they have so many claims.' " State Fund's attorney said his client had agreed to defend Michaelian under a reservation of rights and would reimburse appellants for expenses incurred from September 30, 1993, forward. That same day Bartunek transmitted a facsimile of the letter to Michaelian and his counsel.

*The Reservation of Rights Letter and Response*

In State Fund's letter dated July 21, 1994, signed by Bartunek, State Fund informed Michaelian and his counsel that it "will accept the tender of defense [of the Cobb action] under a complete reservation of rights." The letter continued:

"We are currently investigating the facts at this time. However, if the allegations were found to be true, as alleged in some or all of the allegations in this complaint, and if a judgment were rendered against the policyholder for those allegations, we wish to inform you that the State Fund may not be responsible to indemnify the policyholder for that judgment.

"In reviewing this lawsuit, it appears that the allegations by [Cobb] are for Violations of Public Policy. You should be aware, Violations of Public Policy are not insurable acts. I make reference to the case of *Coit Drapery*

---

[2]This complaint was not included in the record on appeal.

*Cleaners, Inc. et al.* v. *Sequoia Insurance Company* [(1993) 14 Cal.App.4th 1595 (18 Cal.Rptr.2d 692)] 93 C.D.O.S. 2805. I also refer you to the case of *B & E Convalescent Center* v. *State Compensation Insurance Fund* (1992) 8 Cal.App.4th 78 [9 Cal.Rptr.2d 894] which affirmed the trial judge's ruling that our policy did not afford coverage for wrongful termination/discrimination cases. The ruling held that Insurance Code Section 533 bars indemnity and defense for inherently harmful acts that are wrongful as a matter of law, and that the insured could not reasonably expect such coverage.

"We will pay the 'reasonable cost' of your defense until we have paid out in settlement or judgements [*sic*] the limits of your insurance coverage or satisfied ourselves through our own investigations that your policy does not cover [Cobb]'s allegations against you, the named insured in the Declarations.

"It should be further noted that this agreement to provide a defense under a reservation of rights, does not serve to waive any of the provisions or conditions contained in our policy. We reserve our rights to reimbursement of all sums paid by State Fund in the defense of this lawsuit and to withdraw from the defense should our investigation, or legal decision determine there is no obligation under this policy."

The letter also set forth the rates at which State Fund would pay Michaelian's attorneys, specified information to be included in billings, and recited a number of other conditions to its payment of fees and costs. State Fund also reserved the right to appoint other attorneys to represent Michaelian in the Cobb action. The letter concluded by stating that after certain requested information and billing statements had been received, "State Fund will be able to reimburse any past fees and costs related to the defense of our named insured from the date of the tender of defense to State Fund."

Once in August and again in September 1994, Michaelian and his counsel met with State Fund representatives and attorneys to discuss various issues concerning defense of the Cobb action. State Fund requested a letter concerning the attorney fees and costs incurred to date in the Cobb action. Michaelian's counsel sent such a letter on September 23, 1994, and included copies of billing statements from September 30, 1993, through August 31, 1994.

On October 4, 1994, Michaelian's attorney sent a letter to State Fund's attorneys referring to the meetings held in August and September. The letter charged that State Fund "has acted in bad faith towards [Michaelian] by State Fund's failure to timely investigate the claim, its failure to communicate with its Insured until we filed the Complaint, and by the position that

State Fund is currently taking with respect to insurance coverage and, in particular, its stance on its duty to reimburse the Insured for post-tender defense costs." The letter also set forth a number of issues relating to defense and indemnity of the Cobb action, and made various requests on behalf of Michaelian. According to the letter, Michaelian was "willing to compromise on every issue, except the issue of reimbursement of post-tender defense costs. On that issue we will not compromise and, if necessary, we will litigate it to its conclusion and pursue all available remedies." Further, Michaelian "*does not agree* to grant State Fund a right to reimbursement of its defense costs in this matter. It is our position that, until the potentiality for coverage ceases, there is a duty to defend and therefore no right to reimbursement of defense costs."

The letter requested State Fund acknowledge within five days whether it would agree to Michaelian's request that State Fund reimburse him for defense costs incurred from September 30, 1993. No immediate response was received despite followup letters from Michaelian's attorneys on October 11 and 12, 1994. On October 17, State Fund's attorney telephoned Michaelian's counsel and confirmed that State Fund would reimburse Michaelian for attorney fees and costs incurred in the Cobb action from September 30, 1993. The State Fund attorney said he was reviewing the submitted billing statements and payment would be received shortly.

On October 28, 1994, Michaelian's attorney sent a letter to Bartunek asking for immediate payment of all billing statements or an explanation why further delay was warranted. Bartunek did not respond to the letter. On November 29, 1994, Michaelian's counsel again wrote to Bartunek requesting immediate payment and stating service of the summons and complaint in his action against State Fund would be served if payment was not received by December 5. Later on November 29, State Fund issued and mailed its check for $18,212 payable to Michaelian's counsel.[3]

Pleadings indicate on December 5, 1994, State Fund's attorney mailed a letter to Michaelian's counsel stating that " 'payments are being processed (albeit not as quickly as you might desire).' "

On January 6, 1995, Bartunek sent Michaelian's attorneys a letter informing them that State Fund was withdrawing from defense of the Cobb action. Michaelian thereafter continued to incur attorney fees, costs, and expenses in defending the Cobb action.

---

[3]In his opening brief on appeal, Michaelian states that the $18,212 was only a part payment of total defense costs incurred of approximately $113,000. That fact is not specifically alleged in the first amended complaint, but under the legal analysis which follows it would not affect the result we reach.

*The Amended Complaint and Demurrer*

Michaelian filed a first amended complaint in case No. 514702-0 on April 6, 1995. The amended complaint alleges, among other things, that State Fund's reservation of rights letter of July 21, 1994, and Michaelian's letter of October 4, 1994, constituted an agreement enforceable by Michaelian. Michaelian alleged four causes of action based on the Policy: counts (1) breach of contract, (3) breach of implied covenant of good faith and fair dealing, (6) fraud, and (11) declaratory relief; four causes based on the alleged agreement: counts (2) breach of contract, (4) breach of implied covenant of good faith and fair dealing, (7) fraud, and (12) declaratory relief; and four additional causes: counts (5) negligence, (8) intentional infliction of emotional distress, (9) negligent infliction of emotional distress, and (10) constructive trust. The amended complaint alleged Michaelian was damaged from incurring fees, costs, and expenses, and also because settlement of the Cobb action could not be seriously contemplated since "monies possibly available for settlement have been expended, and continue to be expended" in defending the suit.

State Fund filed a general demurrer to the first amended complaint on the grounds it did not state facts sufficient to constitute a cause of action. The trial court sustained the demurrer without leave to amend. The court's written order states the Policy excludes coverage for punitive damages and for damages arising out of the discharge of or discrimination against any employee, and State Fund had no duty to indemnify or defend the Cobb action. Although the order makes no specific reference to the amended complaint's allegation that the parties' correspondence created a separate agreement, the court impliedly rejected that contention, noting that "[Michaelian] ignores the fact that [State Fund] agreed to defend subject to a 'complete reservation of rights.'"

## DISCUSSION

*Standard of Review*

■ Reviewing the sufficiency of a complaint against a general demurrer is guided by long-settled rules. (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) The demurrer is treated as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. Matters which may be judicially noticed may also be considered. (*Serrano* v. *Priest* (1971) 5 Cal.3d 584, 591 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187].) When reviewing the merits of a general demurrer, "The court must, at every stage of an action, disregard any defect

in the pleadings that does not affect the substantial rights of the parties. Pleadings must be reasonably interpreted; they must be read as a whole and each part must be given the meaning that it derives from the context wherein it appears. All that is necessary as against a general demurrer is to plead facts showing that the plaintiff may be entitled to some relief. In passing upon the sufficiency of a pleading, its allegations must be liberally construed with a view to substantial justice between the parties." (*Fundin* v. *Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 [199 Cal.Rptr. 789].)

■ When a demurrer is sustained without leave to amend, it is the duty of the reviewing court to decide whether there is a reasonable possibility that the defect can be cured by amendment. If it can, the trial court has abused its discretion and we must reverse. If it cannot be reasonably cured, there has been no abuse of discretion. (*Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 781 [180 Cal.Rptr. 657, 640 P.2d 793].) It is the plaintiff's burden to show the reviewing court how the complaint can be amended to state a cause of action. (Code Civ. Proc., § 472c; *Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 [134 Cal.Rptr. 375, 556 P.2d 737].)[4]

1. *The Policy provides no coverage for the Cobb action.*

■ Michaelian expressly concedes on appeal that the California Supreme Court decision in *La Jolla Beach & Tennis Club, Inc.* v. *Industrial Indemnity Co.* (1994) 9 Cal.4th 27 [36 Cal.Rptr.2d 100, 884 P.2d 1048] effectively eliminates any coverage for indemnity or defense under part one (workers' compensation insurance) of the Policy. *La Jolla* holds that language in a workers' compensation policy similar to that in this case "does not provide coverage for, and hence does not give rise to a duty to defend, an employee's civil suit for damages." (9 Cal.4th at p. 46.) The fact *La Jolla* was not decided until after Michaelian tendered defense of the Cobb action to State Fund and after State Fund undertook the defense with a reservation of rights does not affect the conclusion that State Fund *never* had a duty to defend under part one of the Policy. (See *Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 25-26 [44 Cal.Rptr.2d 370, 900 P.2d 619], citing *McLaughlin* v. *National Union Fire Ins. Co.* (1994) 23 Cal.App.4th 1132, 1152 [29 Cal.Rptr.2d 559], for rule that "where only potential for liability turns on resolution of a legal question, there is no duty to defend.")

*La Jolla* did not address or decide whether coverage under the employer's liability portion of the insurance policy imposed a duty to defend the employee's civil suit. (9 Cal.4th at p. 35, fn. 3.) In the trial court Michaelian

---

[4]Michaelian has not shown what other facts, if any, he could allege. Thus, we need not decide whether the trial court may have abused its discretion in denying leave to amend.

noted the limited holding in *La Jolla* and argued that State Fund was obligated to provide both a defense and indemnity under part 2 of the Policy. Michaelian has apparently abandoned that argument on appeal. The briefs do not make the contention, nor do they mention the first, third, sixth, or eleventh causes of action, all of which are based on provisions of the Policy.

In any event, we are satisfied Michaelian has no viable claim based on the employer's liability portion of the Policy.

■ A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168].) The determination whether the insurer owes a duty to defend is usually made in the first instance by comparing the allegations of the complaint with the terms of the policy. (*Waller* v. *Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at pp. 19, 26.) Facts extrinsic to the complaint also give rise to a duty to defend when they reveal a possibility that the claim may be covered by the policy. (*Gray* v. *Zurich Insurance Co., supra,* at p. 276.) The obligation to defend, however, is not without limits. Rather, such a duty is limited by the nature and kind of risk covered by the policy. (*Id.* at pp. 274-275.) The insurer does not need to defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 300 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)

■ In deciding whether State Fund owed Michaelian a duty to defend the Cobb action, we must first turn to the Cobb complaint. ■ A complaint is to be "liberally construed" in favor of potential coverage. (*Waller* v. *Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 23.) Since pleadings are easily amended, the proper focus is on the facts alleged, rather than the theories for recovery. (*Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 276.) However, the insured " 'may not speculate about unpled third party claims to manufacture coverage' " (*Coit Drapery Cleaners, Inc.* v. *Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1605 [18 Cal.Rptr.2d 692]), and the insurer has no duty to defend where the potential for liability is " 'tenuous and farfetched.' " (*American Guar. & Liability* v. *Vista Medical Supply* (N.D.Cal. 1988) 699 F.Supp. 787, 794.) The ultimate question is whether the facts alleged "fairly apprise" the insurer that the suit is upon a covered claim. (*Gray* v. *Zurich Insurance Co., supra,* at p. 275, fn. 15.)

■ The first and second Cobb causes of action accuse Michaelian of sexual harassment in violation of Government Code section 12940 and

constructive discharge resulting from the sexual harassment. Part 2, section C of the Policy specifically excludes: "6. damages arising out of the *discharge* of, coercion of or *discrimination* against any employee in violation of law." (Italics added.)

Sexual harassment within the meaning of the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.) is defined as verbal, physical or sexual behavior directed at an individual because of his or her gender. Such harassment includes, but is not limited to, conduct which is verbal (such as epithets, derogatory comments or slurs), as well as physical and visual insults. (*Flait* v. *North American Watch Corp.* (1992) 3 Cal.App.4th 467, 476-477 [4 Cal.Rptr.2d 522]; *Peralta Community College Dist.* v. *Fair Employment & Housing Com.* (1990) 52 Cal.3d 40, 45, fn. 2 [276 Cal.Rptr. 114, 801 P.2d 357].) Sexual harassment has been held to constitute discrimination. (*Accardi* v. *Superior Court* (1993) 17 Cal.App.4th 341, 348 [21 Cal.Rptr.2d 292]; *Mogilefsky* v. *Superior Court* (1993) 20 Cal.App.4th 1409, 1413-1414 [26 Cal.Rptr.2d 116].) Sexual harassment is discrimination in violation of the law and clearly not covered under appellants' liability insurance policy.

Cobb's third and fourth causes of action allege assault and battery and intentional infliction of emotional distress, respectively, based on Michaelian's conduct. Part 2, section C of the Policy excludes: "5. bodily injury intentionally caused or aggravated by you . . . ." Coverage for these causes of action is also precluded by Insurance Code section 533.[5]

Cobb's fifth and final cause of action is for negligent infliction of emotional distress. As noted by the trial court, although the fifth cause of action is one for negligence, "[T]he gravamen of the *Cobb* complaint is conduct constituting sexual harassment in violation of public policy . . . . The pleading of alternative legal theories of liability does not alter the nature of the conduct which forms the basis for the complaint. [Michaelian] cannot avoid contractual policy exclusion merely affixing an additional label or separate characterization to the act or event causing liability. In other words, [Michaelian] obviously intended to make the remarks which were made. See *Chadwick* v. *Fire Ins. Exchange* (1993) 17 Cal.App.4th 1112 . . . . See also *J.C. Penney Casualty Ins. Co.* v. *M.K.* (1991) 52 Cal.3d 1009, 1020-1021 . . . ."

None of the facts alleged in the Cobb complaint give rise to any conceivable theory bringing the Cobb action within the Policy's coverage. In some

[5]Insurance Code section 533 states in pertinent part, "An insurer is not liable for a loss caused by the wilful act of the insured. . . ."

cases a duty to defend may be founded on facts known to the insurer, even if not pleaded in the third party action. (*Montrose Chemical Corp.* v. *Superior Court, supra,* 6 Cal.4th at pp. 298-300; *Horace Mann Ins. Co.* v. *Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) Michaelian, however, did not allege and has never argued that any facts other than those pleaded in the Cobb action could trigger any duty to defend under the Policy.

We conclude the demurrer was properly sustained as to the first, third, sixth, and eleventh causes of action.

### 2. *There was no enforceable agreement to defend the Cobb action.*

Michaelian's principal contention is that the first amended complaint sufficiently alleged an enforceable agreement, consisting of State Fund's reservation of rights letter dated July 21, 1994, "as modified" by the October 4, 1994, letter from Michaelian's counsel, and that State Fund materially breached the agreement by not paying all defense costs incurred after September 30, 1993. Michaelian argues that the State Fund letter constituted an offer, the Michaelian letter was a counteroffer, and State Fund's later payment of some defense costs was an acceptance.

The attempt to transform State Fund's unilateral assumption of the defense under a reservation of rights into an enforceable bilateral contract runs counter to California law.

Our state's law has long recognized that a liability insurer can, by appropriate action, provide its insured a defense without waiving its claim of noncoverage of the policy. (See *Gray* v. *Zurich Insurance Co., supra,* 65 Cal.2d at p. 275.) A leading case discussing the protective actions an insurer may take is *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co.* (1975) 53 Cal.App.3d 576 [126 Cal.Rptr. 267] in which the court said:

"Thus the insurer can avoid being bound by the judgment against the insured if it secures a nonwaiver agreement from the insured (e.g., *Coolidge* v. *Standard Acc. Ins. Co.* [(1931)] 114 Cal.App. 716, 719-720 . . . ; *Sears* v. *Illinois Indemnity Co.* [(1932)] 121 Cal.App. 211, 212-213, 227) . . . or makes an adequate reservation of rights. (E.g., *Bear Film Co.* v. *Indemnity Ins. Co.* [(1937)] 22 Cal.App.2d 520, 523-524 . . . ; see *McDanels* v. *General Ins. Co.* [(1934)] 1 Cal.App.2d 454, 458-461 . . . .)

"The distinction between a nonwaiver agreement and a reservation of rights has been stated as follows: '. . . A nonwaiver agreement is a bilateral

contract, normally in writing, entered into by the assured and the insurer after the accident, providing that the insurer will defend the tort suit while reserving its right to assert nonliability under the policy at a later date. . . . [¶] A reservation of rights is very similar to a nonwaiver agreement, and it is subject to the same limitations and restrictions. It differs in being less formal than the nonwaiver and less tied to strict contract principles. The insurer need only notify, or attempt to notify, the assured that it is conducting the investigation and defense of the tort claim under a reservation of the right to assert policy defenses at a later time, and the assured's silence will usually be deemed acquiescence. Courts have in general been fairly liberal in implying reservations.' (Note (1955) 68 Harv.L.Rev. 1436, 1446, 1447; fns. omitted.)" (*Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co., supra,* 53 Cal.App.3d at p. 586.)

■ The question here is whether Michaelian's letter of October 4, 1994, expressing disagreement with State Fund's claimed right to reimbursement of defense costs which it might pay, negates State Fund's right to withdraw from the defense at any time without liability to pay defense costs incurred before the withdrawal.

In *Val's Painting & Drywall, Inc.* v. *Allstate Ins. Co., supra,* 53 Cal.App.3d at pages 586-587, the court discussed situations in which the insured refuses to consent:

"[I]t has been said that if the insured expressly refuses to consent to a reservation of rights, a unilateral reservation is ineffective; the insurer must make an election whether to defend or refuse to defend. 7A Appleman, Insurance (1962) § 4694, pp. 546-547; Note [(1950)] 2 Stan.L.Rev. 387-388; Roos, [*The Obligation to Defend and Some Related Problems* (1961)] 13 Hastings L.J. [206,] 207.)

"In California, however, the theory that by defending the suit an insurer 'waives' its right to claim noncoverage rests upon the doctrine of estoppel. There must be a showing that the insurer either intentionally relinquished a known right, or acted in such manner as to cause the insured reasonably to believe the insurer had relinquished such right, and that the insured relied upon such conduct to his detriment. [Citations.]"[6]

Michaelian does not argue that State Fund intentionally waived its right to withdraw from defense of the Cobb suit and assert its noncoverage claims at

---

[6]However, coverage cannot be *established* under an insurance policy by estoppel or waiver. " ' " 'The rule is well established that the doctrines of implied waiver and of estoppel, based upon the conduct or action of the insurer, are not available to bring within the coverage of a policy risks not covered by its terms. . . .' " ' " (*Manneck* v. *Lawyers Title Ins. Corp.* (1994) 28 Cal.App.4th 1294, 1303 [33 Cal.Rptr.2d 771].)

any time, and there are no pleaded facts supporting waiver. Michaelian does, however, make an estoppel argument. He alleges that he relied on State Fund's July 21, 1994, letter and its later partial payment of defense costs by delaying service of the summons and complaint in his action against State Fund. ■ ". . . Estoppel requires: (1) the party to be estopped knew the facts; (2) the other party was ignorant of the true facts; (3) the party intended his conduct would be acted upon, or acted in a manner that the party asserting the estoppel had a right to believe it so intended; and (4) the other party relied upon the conduct to his injury. Where one of the elements is missing, there can be no estoppel. (*Golden West Baseball Co.* v. *City of Anaheim* (1994) 25 Cal.App.4th 11, 47 . . . ; *Hair* v. *State of California* (1991) 2 Cal.App.4th 321, 328-329 . . . ; 11 Witkin, Summary of Cal. Law [9th ed. 1990] Equity, § 177, p. 859.) The doctrine acts defensively only. It operates to prevent one from taking unfair advantage of another but not to give an unfair advantage to one seeking to invoke the doctrine. (*In re Marriage of Umphrey* (1990) 218 Cal.App.3d 647, 658 . . . .)" (*In re Marriage of Thompson* (1996) 41 Cal.App.4th 1049, 1061 [48 Cal.Rptr.2d 882].)

■ Even if we assume the first three elements of estoppel may be inferred from the facts alleged, there is no showing Michaelian's reliance on State Fund's assumption of the Cobb defense caused him injury. If, as we gather from Michaelian's argument, the suit he filed against State Fund in July 1994 was to obtain a declaration of rights and a judgment enforcing rights he claimed under the Policy regarding the Cobb action, together with damages for bad faith breach of the Policy, his suit was doomed to failure. As we have concluded above, State Fund never had a duty under the Policy to indemnify or defend Michaelian in the Cobb action. It follows that Michaelian had no viable cause for breach of the implied covenant of good faith and fair dealing. (*Waller* v. *Truck Ins. Exchange, Inc.*, *supra*, 11 Cal.4th at p. 36.)

In *Insurance Co. of the West* v. *Haralambos Beverage Co.* (1987) 195 Cal.App.3d 1308 [241 Cal.Rptr. 427], the court suggested that an insured, relying on an insurer's defense of a third party action, might suffer prejudice by failing to retain an attorney, failing to negotiate a settlement,[7] or failing to deal directly with the opposing party or counsel. (195 Cal.App.3d at p. 1321;

[7]In their October 4, 1994, letter to State Fund, Michaelian's attorneys stated the belief that "State Fund has prejudiced [Michaelian] by, among other things, making it impossible for [Michaelian] to quickly settle [the Cobb] case." No facts supporting this conclusion were included in the letter or alleged in the first amended complaint below. To the extent the statement may have been referring to the period before State Fund's letter of July 21, 1994, it is irrelevant on the issue now being considered. If Michaelian meant to contend that State Fund's assumption of the defense somehow interfered with his ability to settle the Cobb case

see also *Miller* v. *Elite Ins. Co.* (1980) 100 Cal.App.3d 739, 755 [161 Cal.Rptr. 322].) Michaelian's allegations show that his own attorneys defended the Cobb action, both before and after State Fund conditionally assumed the defense. While Michaelian argues that State Fund maintained some control over the case, he points only to the schedule of fees and costs set out in the State Fund letter and the "right to notice of the developments of the case." He does not allege any facts showing how those matters may have worked to his detriment. Since State Fund contributed over $18,000 to defending a case which it had no legal duty to defend, we fail to see how Michaelian was prejudiced.

Michaelian did not plead sufficient facts justifying a conclusion that State Fund was estopped from withdrawing from defense of the Cobb action at any time without further liability.

Assuming traditional contract principles applied to Michaelian's claim, it is still not sustainable for at least two reasons. First, we cannot agree with Michaelian that State Fund's letter of July 21, 1994, was an "offer," except possibly as to one matter which has no bearing in this case.[8] Both in form and content the letter was a notification of State Fund's decision to provide a defense subject to various conditions and with a "complete reservation of

---

after July 21, 1994, it was incumbent on him to allege supporting facts. He did not do so. Neither did he represent either to the trial court or to this court that there were other, unpleaded facts which would show such interference.

[8]The one matter as to which State Fund's letter might be considered an offer is the asserted right to reimbursement of any sums paid by State Fund in defense of the Cobb action. Several reported cases have considered such a claim.

It seems clear that an insurer that defends under a reservation of rights is not entitled to reimbursement as a matter of law. (*Insurance Co. of the West* v. *Haralambos Beverage Co.*, *supra*, 195 Cal.App.3d at p. 1322.) Reimbursement has been disallowed when the insurer's reservation of rights letter did not mention reimbursement (*Travelers Ins. Co.* v. *Lesher* (1986) 187 Cal.App.3d 169, 203 [231 Cal.Rptr. 791]), when the right to reimbursement was expressly made conditional on the insured's agreement, which was not forthcoming (*American Motorists Ins. Co.* v. *Allied-Sysco Food Services, Inc.* (1993) 19 Cal.App.4th 1342, 1355-1356 [24 Cal.Rptr.2d 106]), and when the claim was based solely on the theory of equitable restitution (*Reliance Ins. Co.* v. *Alan* (1990) 222 Cal.App.3d 702, 709-710 [272 Cal.Rptr. 65]).

Two federal district courts, applying their interpretation of California law, allowed insurers reimbursement of defense costs from the insured when the insurer reserved the right to seek reimbursement. In *Omaha Indem. Ins. Co.* v. *Cardon Oil Co.* (N.D.Cal. 1988) 687 F.Supp. 502, the court inferred acquiescence from the insured's silence. (*Id.* at p. 505.) In *Walbrook Ins. Co. Ltd.* v. *Goshgarian & Goshgarian* (C.D.Cal. 1989) 726 F.Supp. 777, the insured specifically objected to the insurer's reserved right of reimbursement. Nevertheless, the court allowed reimbursement, finding the insured's later acceptance of defense costs was inconsistent with the objection and constituted evidence of an implied agreement to the reservation. (*Id.* at p. 784.) This case is factually similar to *Walbrook* in that Michaelian expressly rejected State Fund's reservation of a right to reimbursement, but thereafter accepted payment of some defense costs. We need not decide whether the *Walbrook* court correctly applied California

rights." It was a means by which State Fund sought to protect *its* interests, not those of Michaelian. (See *Travelers Ins. Co.* v. *Lesher, supra*, 187 Cal.App.3d at p. 204; *Insurance Co. of the West* v. *Haralambos Beverage Co., supra*, 195 Cal.App.3d at p. 1323; *Reliance Ins. Co.* v. *Alan, supra*, 222 Cal.App.3d at p. 709.)

In addition, on the facts alleged, Michaelian has not shown there was any sufficient consideration for State Fund's conditional agreement to defend.[9]

Michaelian argues the consideration requirement is met in three respects. First, he relies on Civil Code section 1614 which provides that "[a] written instrument is presumptive evidence of a consideration." The term "written instrument" as it appears in that statute, however, does not apply to letters, but only to more formal legal documents. (*Weisbrod* v. *Weisbrod* (1938) 27 Cal.App.2d 712, 718-721 [81 P.2d 633]; *Foltz* v. *First Trust & Savings Bank* (1948) 86 Cal.App.2d 59, 61-62 [194 P.2d 135].)

Second, Michaelian argues that he gave consideration by forbearing from pursuit of his bad faith action against State Fund, at least until after State Fund withdrew from the Cobb case defense. Forbearance to sue on a claim, extension of time, or any other giving up of a legal right may be sufficient consideration for a promise. (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 214, p. 223.) It is not sufficient, however, when the claim is wholly invalid or worthless. (*Id.* at §§ 223, 224, pp. 230-231.) As Michaelian never had any valid claim to a defense from State Fund under the Policy, his alleged forbearance does not constitute consideration.

Likewise, Michaelian's third argument, that the consideration element was supplied through the doctrine of promissory estoppel, fails. While California law recognizes the doctrine of promissory estoppel, the party claiming it must plead all facts establishing the doctrine's elements. (*Smith* v. *City and County of San Francisco* (1990) 225 Cal.App.3d 38, 48 [275 Cal.Rptr. 17].) One of those elements is detrimental reliance. (*Ibid.*) The only reliance alleged by Michaelian was his delay in serving the summons and complaint in a bad faith action which had no merit. He could not have suffered detriment from that delay.

---

law, though, because State Fund does not seek, at least in this action, reimbursement of the $18,212 which it paid to Michaelian's attorneys.

[9]In *Reliance Ins. Co.* v. *Alan, supra*, 222 Cal.App.3d 702, the court pointed out that an insurer alleging a contract for reimbursement of defense costs paid under a reservation of rights must establish all the elements necessary for formation of a valid contract, including sufficient consideration, "separate and apart from that which supported the initial insurance contract." (*Id.* at p. 710, fn. 4.) The same requirement applies here, although it is the insured, not the insurer, alleging a separate agreement. In seeking to enforce State Fund's promise to defend, which arose outside the Policy, Michaelian must show the promise is supported by consideration separate from that given for the Policy. (Civ. Code, § 1550.)

Because the first amended complaint did not allege facts supporting Michaelian's claim that the exchange of letters constituted an enforceable contract, the court properly sustained the demurrer to the second, fourth, and twelfth causes of action.

3. *The other causes of action fail to allege sufficient facts to withstand demurrer.*

 Michaelian's other causes of action alleged negligence, fraud, intentional and negligent infliction of emotional distress, and constructive trust theories. Those causes all depend on the same facts from which Michaelian argues State Fund owed a duty to defend, either under the Policy or under the purported agreement.

Because Michaelian does not allege any additional facts establishing any legal duty owed by State Fund, the negligence cause fails. (6 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 732, p. 60 [a legal duty to use due care is the first element of a negligence cause].) Similarly, the negligent infliction of emotional distress cause founders on the lack of facts showing a legal duty. (*Burgess* v. *Superior Court* (1992) 2 Cal.4th 1064, 1072 [9 Cal.Rptr.2d 615, 831 P.2d 1197].)

The seventh cause of action alleges that when State Fund executed and delivered "the Agreement," it falsely and fraudulently represented it would accept the tender of defense of the Cobb action and reimburse fees and costs related to the defense, but it then had no intention of performing. The complaint does not, however, allege any representations other than those included in the reservation of rights letter. That letter expressly notified Michaelian the Cobb action was not covered by the Policy and State Fund reserved all of its rights under the Policy, and Michaelian's claim of fraud is inconsistent with the letter's contents. A fraud cause of action must be pleaded "with particularity." (*Committee on Children's Television, Inc.* v. *General Food Corp.* (1983) 35 Cal.3d 197, 216 [197 Cal.Rptr. 783, 673 P.2d 660].) The seventh cause of action does not meet the heightened pleading requirements for fraud actions, and Michaelian has not shown that there are additional facts which he could allege in an amended pleading to cure the defect.

Although the amended complaint alleges Michaelian sustained injury to his health, strength, and emotional condition, it failed to adequately allege a cause of action for intentional infliction of emotional distress. The elements of a cause on that theory are (1) extreme and outrageous conduct that is directed at the insured, (2) the intention to cause, or acting in conscious disregard of the probability of causing, emotional distress, (3) severe emotional distress, (4) actual and proximate cause of the emotional

distress, and (5) consequential damages caused by the emotional distress. (*Christensen* v. *Superior Court* (1991) 54 Cal.3d 868, 903-905 [2 Cal.Rptr.2d 79, 820 P.2d 181].) The complaint must plead specific facts that establish severe emotional distress resulting from defendant's conduct. (*Bogard* v. *Employers Casualty Co.* (1985) 164 Cal.App.3d 602, 617 [210 Cal.Rptr. 578].) ▆▆ In fact, the insured must plead and prove acts by the insurer so extreme as to exceed all bounds usually tolerated in a civilized community. (*Schlauch* v. *Hartford Accident & Indemnity Co.* (1983) 146 Cal.App.3d 926, 936 [194 Cal.Rptr. 658].) Nothing of the sort appears in Michaelian's pleading.

Michaelian's 10th cause of action alleges State Fund fraudulently failed and refused to convey payments to Michaelian and thus holds the money as a constructive trustee for Michaelian's benefit. ▆▆ A cause of action for constructive trust is not based on the establishment of a trust, but consists of fraud, breach of fiduciary duty or other act which entitles the plaintiff to some relief. Relief, in a proper case, may be to make the defendant a constructive trustee with a duty to transfer to the plaintiff. (*In re Marriage of Buford* (1984) 155 Cal.App.3d 74, 79 [202 Cal.Rptr. 20], disapproved on other grounds in *In re Marriage of Fabian* (1986) 41 Cal.3d 440, 451 [224 Cal.Rptr. 333, 715 P.2d 253].) Pleading requirements are: (1) facts constituting the underlying cause of action, and (2) specific identifiable property to which defendant has title. (5 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 791, pp. 234-235.)

▆▆ Because Michaelian did not allege facts showing any fraud or breach of any fiduciary duty, he is not entitled to relief under a constructive trust theory.

DISPOSITION

Judgment affirmed. Costs to respondent.

Ardaiz, P. J., and Moran, J.,* concurred.

On December 11, 1996, the opinion was modified to read as printed above.

---

*Judge of the Tulare Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.