74 Cal.Rptr.2d 338 (1998)
63 Cal.App.4th 751
TAMRAC, INC., Plaintiff and Respondent,
v.
CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant and Appellant.
No. B112554.
Court of Appeal, Second District, Division Four.
April 30, 1998.
*339 Jones Nelson Screeton & Evidon, Jones Nelson Screeton & Cornforth, and Alan D. Sarvas, Panorama, for Defendant and Appellant.
Heenan & Blaikie and Deborah F. Sirias, Beverly Hills, for Plaintiff and Respondent.
CHARLES S. VOGEL, Presiding Justice.

INTRODUCTION
In La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co. (1994) 9 Cal.4th 27, 36 Cal.Rptr.2d 100, 884 P.2d 1048 (hereafter La Jolla), the California Supreme Court held that because workers' compensation benefits can never be awarded in a civil lawsuit for damages, there is no potential that a judgment in the civil suit can come within the indemnity provisions of a workers' compensation insurance policy, and therefore a workers' compensation insurance carrier has no duty to defend a civil suit against the insured. In the present case the trial court held that appellant California Insurance Guarantee Association (CIGA), pursuant to its statutory obligations for certain claims against an insolvent insurer, is nevertheless liable for costs incurred by respondent Tamrac, Inc. (Tamrac) in defending such a civil lawsuit. The trial court ruled that La Jolla does not apply because La Jolla, which expressly overruled a prior Court of Appeal decision to the contrary, was not decided until after Tamrac's underlying civil action was concluded. We reverse. The La Jolla decision means there never was a potential for coverage and never was a duty to defend. La Jolla states the rule applicable to this case, and CIGA is entitled to rely on it, having reserved its rights at the time of agreeing conditionally to accept the defense of the underlying civil action.

FACTUAL AND PROCEDURAL BACKGROUND
The material facts are undisputed. The following is a detailed chronology.
Pacific States Casualty Company issued a policy of workers' compensation and employer liability insurance to Tamrac. Pursuant to Insurance Code section 1063 et seq., CIGA became obligated for certain claims presented against Pacific States Casualty Company.
Mary Waterrose commenced employment with Tamrac on September 25,1990, and was terminated from employment on February 26,1993.
On September 20, 1993, Waterrose filed a complaint against Tamrac (Waterrose v. Tamrac, Inc. (Super. Ct. L.A. County, 1993, No. BC089461)). Waterrose alleged nine causes of action, for age discrimination, wrongful termination, breach of contract, breach of implied covenant of good "faith and fair dealing, fraud and deceit, negligent misrepresentation, promissory estoppel, and intentional and negligent infliction of emotional distress.
On October 27, 1993, Tamrac tendered the defense of the action to CIGA.[1] In its letter tendering the defense, Tamrac argued that Waterrose's eighth and ninth causes of action *340 for emotional distress raised claims potentially covered by workers' compensation, and cited Wong v. State Compensation Ins. Fund (1993) 12 CalApp.4th 686, 16 Cal.Rptr.2d 1 for the proposition that such potential for recovery under the policy obligated CIGA to defend.
On April 7, 1994, CIGA offered to provide a defense, through attorneys of its choosing, subject to a reservation of rights to withdraw from its agreement to defend, "upon reasonable notice to Tamrac."
Tamrac objected to that offer on two grounds. First, on April 18, 1994, Tamrac cited a potential for conflict of interest if attorneys of CIGA's choosing defended the entire action including those causes of action having no potential for coverage. Second, on May 25, 1994, Tamrac cited the difficulty of bringing a new attorney into the case in light of the imminence of urgent fast-track deadlines. Tamrac preferred that CIGA agree to pay the cost of the attorneys who were already defending Tamrac in the Waterrose action.
On June 6, 1994, CIGA agreed to accept the defense subject to certain conditions and with a reservation of rights to withdraw from the defense and to seek reimbursement from Tamrac. CIGA agreed to the retention of Tamrac's attorneys, at a maximum rate of $125 per hour, from April 11, 1994. CIGA's letter stated preliminarily, "California law presently appears to obligate the workers' compensation insurer to provide defense in the civil action to this type of claim only because the compensation carrier may be obligated to pay workers' compensation benefits to the employee in the event that the civil court determines that certain of the civil claims are cognizable only at the Workers' Compensation Appeals Board and the employee thereafter invokes the jurisdiction of the WCAB and prevails in that administrative forum." But CIGA reserved its rights as follows: "CIGA's acceptance of the tender of defense of the civil case is based upon the potential for liability for workers' compensation benefits. CIGA reserves its right to withdraw its acceptance of the tender of defense in the event that it is determined, either factually or legally, that there is no longer any potential for liability to indemnify for workers' compensation benefits. Further, CIGA also reserves its rights to seek reimbursement, in whole or in part, from the policy holder for all costs of defense paid by CIGA in the event that it is determined that there is no potential for liability for payment of compensation benefits or that the claims made against CIGA are not `covered claims' as defined by statute. Further, CIGA reserves all rights to seek reimbursement from the policy holder for that proportion of the costs of defense which are attributable to causes of action that do not create any potential for liability for workers' compensation benefits. Thus, CIGA reserves all rights to seek allocation of attorney fees and costs...." CIGA's letter concluded by requesting that CIGA be kept abreast of the costs and estimated costs and the status of the case.
On August 5, 1994, Tamrac submitted to CIGA its detailed invoices for attorney fees incurred to date. CIGA did not pay them.
On September 19, 1994, the court in the Waterrose case granted summary adjudication of issues in favor of Tamrac on all causes of action except breach of contract and breach of the covenant of good faith and fair dealing. The ground for summary adjudication of the eighth and ninth causes of action for emotional distress was that "these claims are barred by the exclusive provisions of the Workers' Compensation Act." Tamrac asserts in its respondent's brief that Tamrac settled with Waterrose in October 1994 and that the Waterrose case was dismissed in November 1994.
On October 12, 1994, Tamrac demanded that CIGA pay the previously submitted invoices and additional invoices for services in July, August, and September. Tamrac's letter referred to a previous letter from CIGA of September 30, 1994, which is not in the record; apparently CIGA therein balked at paying the defense costs.
On October 27, 1994, CIGA faxed a response which reminded Tamrac of the April 7, 1994, and June 6, 1994, reservations of rights to withdraw the defense and seek reimbursement of all attorney fees and costs. *341 CIGA commented, "We both know that the status of the law pertaining to civil claims and compensation policies is in almost constant flux. The Supreme [Court] has accepted La Jolla [see post], and a reversal of the lower [court] may totally eradicate an obligation of a comp insurer to defend civil claims."
On November 3, 1994, CIGA notified Tamrac unequivocally that CIGA would not pay the defense costs. CIGA interpreted the allegations of Waterrose's underlying complaint to be a claim for emotional distress suffered from and after termination of employment, rather than during employment, and cited the recent decision in Bray v. Workers' Comp. Appeals Bd. (1994) 26 Cal. App.4th 530, 31 Cal.Rptr.2d 580 that posttermination injuries are not compensable by workers' compensation. CIGA "has concluded that the civil action filed by Mary Waterrose does not present, and never has presented, covered claims. Therefore, [CIGA] has further concluded that it does not owe, and has never owed, any duty to [Tamrac] to pay for costs of defense in reference to the Waterrose civil action. [CIGA] exercises its rights and hereby rejects all demands by [Tamrac] to defend and indemnify, defend, or indemnify as to any and all claims for reimbursement or payment of past or future attorneys' fees or costs incurred by [Tamrac] in reference to [the Waterrose] civil action."
On December 19, 1994, the California Supreme Court decided La Jolla, supra, 9 Cal.4th 27, 36 Cal.Rptr.2d 100, 884 P.2d 1048. The Supreme Court held, contrary to the Court of Appeal decision, that a workers' compensation insurance policy is unambiguous and cannot reasonably be construed to provide a duty to defend a civil suit seeking damages. Workers' compensation benefits and civil damages are mutually exclusive. Because workers' compensation benefits can never be awarded in a civil suit, a civil suit for damages has no potential for a judgment within the indemnity provisions of a compensation insurance policy, and hence cannot give rise to a duty to defend such a civil suit. (Id. at pp. 43-46, 36 Cal.Rptr.2d 100, 884 P.2d 1048.) The Supreme Court expressly disapproved Wong v. State Compensation Ins. Fund, supra, 12 Cal.App.4th 686, 16 Cal.Rptr.2d 1. (9 Cal.4th at p. 46, fn. 4, 36 Cal.Rptr.2d 100,884 P.2d 1048.)
In January 1995 Tamrac filed the present action against CIGA seeking to collect its attorney fees and costs incurred in the Waterrose action. Both parties moved for summary judgment. They agreed upon virtually all the facts relating to the duty to defend. CIGA argued that under the La Jolla decision CIGA had no duty to defend, and that CIGA had adequately reserved its rights. Tamrac argued that "CIGA's reservation of rights to withdraw its acceptance of the tender of defense expired when the Motion for Summary Adjudication as to the emotional distress claims was granted on September 19, 1994." CIGA replied, "CIGA's reservation of rights to withdraw its acceptance of the tender of defense has never expired." CIGA relied on its reservation of rights to seek reimbursement, because "even though no defense costs have been paid by CIGA... it would obviously be an idle act to require CIGA to pay such defense costs if it has the right to reimbursement of those costs."
The trial court denied summary judgment on the ground there were triable issues of fact as to the amount of damages. At the same time the court indicated its belief that CIGA was liable for defense costs, because Wong was the law at the time the defense was accepted, and La Jolla was not decided until later. But at the subsequent nonjury trial the court stated that it had not intended its earlier ruling as binding on liability. The parties thereupon tried the liability issue to the court by submitting on their summary judgment papers and further argument. CIGA argued that having reserved its rights to seek reimbursement, CIGA was fully entitled to take advantage of the subsequent La Jolla decision holding that there was no potential for coverage and no duty to defend. Tamrac argued that La Jolla should not apply, because the Waterrose case was over and final before La Jolla was decided. Insurers should not be entitled, Tamrac argued, to request reimbursement of defense costs in cases which have already become final.
*342 The court found CIGA liable for its refusal to pay Tamrac's defense costs. The parties stipulated that Tamrac's attorney fees and costs, from April 11, 1994, when CIGA agreed to pay, to September 14, 1994, when Tamrac obtained summary adjudication of issues in the Waterrose case, were $39,330.52. The trial court rendered judgment for Tamrac for $39,330.52 plus interest from September 18, 1995, which is the date the court found the damages were made certain. CIGA appeals.

DISCUSSION
Although the judgment arises from a nonjury trial rather than a summary judgment, there were no material disputed facts, as indicated by the parties' submission on their summary judgment papers at trial. Under the circumstances a question of law is presented for our independent review.
La Jolla, supra, 9 Cal.4th 27, 43-6, 36 Cal.Rptr.2d 100, 884 P.2d 1048, establishes as a matter of law that there never was a potential for coverage that imposed on CIGA a duty to defend the civil lawsuit against Tamrac. We find no merit to Tamrac's contention that La Jolla does not apply because it was not decided until after the Waterrose case was concluded.
La Jolla is the law applicable to the present case, the dispute between CIGA and Tamrac over the costs of the defense in the underlying Waterrose case. Tamrac's contention is inconsistent with established principles concerning the application of new decisions to cases still open, as this case is. (Waller v. Truck Ins. Exchange, Inc. (1995) 11 Cal.4th 1, 23-24, 44 Cal.Rptr.2d 370, 900 P.2d 619; Ticor Title Ins. Co. v. Employers Ins. of Wausau (1995) 40 Cal.App.4th 1699, 1713, fn. 9, 48 Cal.Rptr.2d 368; Michaelian v. State Comp. Ins. Fund (1996) 50 Cal. App.4th 1093, 1105, 58 Cal.Rptr.2d 133.)
Michaelian, supra, 50 Cal.App.4th 1093, 58 Cal.Rptr.2d 133, is remarkably similar to the present case. The workers' compensation insurer agreed to reimburse the insured's defense costs of a civil suit for wrongful termination, with a reservation of rights to seek reimbursement of all sums paid by the insurer or to withdraw from the defense "'should our investigation, or legal decision determine there is no obligation under this policy.'" (Id. at p. 1102, 58 Cal.Rptr.2d 133.) Like CIGA here, the insurer delayed payment and on January 6, 1995 (i.e., after the La Jolla decision) notified the insured it was withdrawing. (Id. at p. 1103, 58 Cal.Rptr.2d 133.) The insured subsequently filed suit to recover his defense costs against the insurer, which was dismissed on demurrer. The appellate court held that under La Jolla there was no duty to defend under the workers' compensation policy. It added, "The fact La Jolla was not decided until after Michaelian tendered defense of the Cobb action to State Fund and after State Fund undertook the defense with a reservation of rights does not affect the conclusion that State Fund never had a duty to defend under part one of the Policy." (Id. at p. 1105, 58 Cal.Rptr.2d 133, italics in original.)
It is irrelevant that Wong v. State Compensation Ins. Fund, supra, 12 Cal.App.4th 686, 16 Cal.Rptr.2d 1, supported a duty to defend at the time that CIGA accepted the defense with a reservation of rights. The Supreme Court determined that Wong was wrongly decided. Because the only potential for coverage turned on a legal question, we must apply the present law of La Jolla that there never was a potential for coverage, and hence there never was a duty to defend. (Michaelian v. State Comp. Ins. Fund, supra, 50 Cal.App.4th at p. 1105, 58 Cal.Rptr.2d 133; Ticor Title Ins. Co. v. Employers Ins. of Wausau, supra, 40 Cal.App.4th at p. 1713, fn. 9, 48 Cal.Rptr.2d 368; McLaughlin v. National Union Fire Ins. Co. (1994) 23 Cal. App.4th 1132, 1151, 29 Cal.Rptr.2d 559.)
Tamrac misplaces reliance on cases where there was factually a potential for coverage which imposed the duty to defend, and the insurer subsequently developed facts showing there was no duty in the particular circumstances. In those situations the insurer's duty to defend ceases prospectively from the subsequent determination but not retroactively to the beginning. (Haskel, Inc. v. Superior Court (1995) 33 Cal.App.4th 963, 977, 39 Cal.Rptr.2d 520; Hartford Accident & Indemnity Co. v. Superior Court (1994) 23 *343 Cal.App.4th 1774, 1781, 29 Cal.Rptr.2d 32; Fireman's Fund Ins. Co. v. Chasson (1962) 207 Cal.App.2d 801, 807, 24 Cal.Rptr. 726; see Montrose Chemical Corp. v. Superior Court (1993) 6 Cal.4th 287, 301, 24 Cal. Rptr.2d 467, 861 P.2d 1153; Buss v. Superior Court (1997) 16 Cal.4th 35, 46, 65 Cal.Rptr.2d 366, 939 P.2d 766.) Here, under La Jolla, as a matter of law there was never a potential for coverage.
The fact that the underlying Waterrose case was over is irrelevant. Insurance coverage and the costs and duties of defense are not issues that would be determined in the underlying case. (State Farm Fire & Casualty Co. v. Eddy (1990) 218 Cal.App.3d 958, 968, 267 Cal.Rptr. 379.) If the insurer adequately reserves its rights at the time of accepting the defense, the dispute between insured and insurer can be determined after the underlying suit is finished. (Ibid.) For example, in Truck Ins. Exchange v. Superior Court (1996) 51 Cal.App.4th 985, 989-990, 59 Cal.Rptr.2d 529, the insurer provided independent counsel for the insured in the underlying suit, with a reservation of rights to seek reimbursement in the event "'it be determined that the Truck policies do not apply'" to the underlying action. After the judgment in favor of the insured in the underlying judgment, the insurer filed an action for reimbursement of the money it spent on the defense, contending it had no duty to defend. The court stated, "If the reservation of rights agreement contains a reimbursement clause, the carrier retains its right to seek reimbursement for payments expended if noncoverage is ultimately proven." (Id. at p. 994, 59 Cal.Rptr.2d 529; see Buss v. Superior Court, supra, 16 Cal.4th at p. 61, fn. 27, 65 Cal.Rptr.2d 366, 939 P.2d 766 [insurer may unilaterally reserve its right to seek reimbursement of defense costs from the insured]; Frank and Freedus v. Allstate Ins. Co. (1996) 45 Cal.App.4th 461, 474, 52 Cal.Rptr.2d 678 ["The law permits an insurance company to condition an acceptance of defense on a later right to contest coverage or to seek reimbursement of defense costs" (italics added)]; see generally Vol's Painting & Drywall, Inc. v. Allstate Ins. Co. (1975) 53 Cal.App.3d 576, 126 Cal.Rptr. 267.) The reservation of a right to "seek reimbursement" of "all costs of defense" logically implies that reimbursement will be sought in a proceeding after the conclusion of the underlying case. Although CIGA did not actually pay the costs and is instead a defendant in a proceeding initiated by Tamrac, this case should be analyzed under CIGA's reservation of a right to seek reimbursement, because it would be idle to require CIGA to pay Tamrac if CIGA has a right to reimbursement from Tamrac.(Civ.Code, § 3532.)CIGA adequately reserved its right "to seek reimbursement, in whole or part, from the policy holder for all costs of defense paid by CIGA in the event that it is determined that there is no potential for liability for payment of compensation benefits or that the claims made against CIGA are not `covered claims' as defined by statute."Under La Jolla, there was no potential for liability for payment of workers' compensation benefits in the Waterrose civil action. (See also Saylin v. California Ins. Guarantee Assn. (1986) 179 Cal.App.3d 256, 262-264, 224 Cal.Rptr. 493 [where CIGA had no duty to defend, the insured's claim was not a "covered claim" under CIGA's statute].) CIGA's reservation of rights did not specify a time by which it must be determined that there is no potential for liability or by which CIGA must seek reimbursement. We need not decide what statute of Umitation or other time bar might apply to an insurer's action for reimbursement of defense costs under a reservation of rights. To decide this case we need only reject Tamrac's contention that the time limit is before the underlying action ends.
Although Tamrac loosely refers to this as a "breach of contract" case seeking to enforce CIGA's agreement to pay defense costs, Tamrac fails to show a contractual basis for its claim. CIGA agreed to pay defense costs subject to its reservation of rights, the condition of which was fulfilled by La Jolla. CIGA's reservation of rights was unilateral, not dependent upon Tamrac's agreement. (See Buss v. Superior Court, supra, 16 Cal.4th at p. 61, fn. 27, 65 Cal. Rptr.2d 366, 939 P.2d 766; Michaelian v. State Comp. Ins. Fund, supra, 50 Cal. App.4th at pp. 1111-1112, 58 Cal.Rptr.2d 133.) Tamrac does not show that CIGA's *344 agreement was supported by consideration separate from the insurance policy. (See Buss, supra, 16 Cal.4th at p. 49, 65 Cal. Rptr.2d 366, 939 P.2d 766; Michaelian, supra, 50 Cal.App.4th at p. 1112 & fn. 9, 58 Cal.Rptr.2d 133.)
Nor does Tamrac claim that CIGA's "agreement" can be enforced by estoppel. Estoppel would require Tamrac to show that it detrimentally relied upon CIGA's promise to pay. This is not a situation where the insured failed to obtain its own counsel because it relied upon the insurer's promise to provide counsel. (E.g., Stonewall Ins. Co. v. City of Polos Verdes Estates (1996) 46 Cal.App.4th 1810, 1839, 54 Cal.Rptr.2d 176.) Here Tamrac already had its own attorneys defending the Waterrose action. The only detriment suffered by Tamrac was the failure of CIGA to follow through with a "subsidy" of the defense, a subsidy to which Tamrac was not entitled because CIGA had no duty to defend. (Michaelian v. State Comp. Ins. Fund, supra, 50 Cal.App.4th at pp. 1110-1111, 58 Cal.Rptr.2d 133; California Union Ins. Co. v. Club Aquarius (1980) 113 Cal. App.3d 243, 248-249, 169 Cal.Rptr. 685; see Buss v. Superior Court, supra, 16 Cal.4th at pp. 50-51, 65 Cal.Rptr.2d 366, 939 P.2d 766.)

DISPOSITION
The judgment is reversed. Costs on appeal are awarded to appellant.
HASTINGS and CZULEGER,[*] JJ., concur.
NOTES
[1] For ease of narrative we refer to correspondence as being between "Tamrac" and "CIGA," omitting more precise references to Pacific States' representative, CIGA's servicing agent, and the attorneys for Tamrac and CIGA.
[*] Assigned by the Chairperson of the Judicial Council.